STATE v. GEORGE A. DURNAM.

July 1, 1898.

Nos. 11,085—(18).

**Challenge to Panel of Petit Jury—Judge's Certificate—Meaning of Record.**

The record, in connection with the trial judge's certificate, construed as meaning the defendant's challenge to the panel of petit jurors was to be deemed denied by the state, and submitted on the same evidence as a similar challenge on the trial of a prior similar case.

**Challenge to Jurors for Actual Bias—Waiver of Objection by Defendant.**

The objection, if any, to the form of the challenges of the state to individual jurors on the ground of actual bias was waived by defendant's joining issue on it without objection, and submitting it upon evidence to the decision of the court acting as trior.

**Court as Trior—Decision Final.**

When the court acts in the place of triors, its decision is final.

**Asking a Bribe—G. S. 1894, § 6349—Meeting of Minds or Understanding between the Parties Unnecessary.**

To constitute the crime of asking for a bribe by a public officer "with the understanding or agreement that his vote," etc., "shall be influenced thereby" (G. S. 1894, § 6349), it is not necessary that the party solicited for the bribe shall consent to give it, or that there shall be any meeting of minds or mutual understanding or agreement between him and the party asking for a bribe. It is sufficient if the latter is ready and willing to enter into a corrupt agreement or understanding that his vote, etc., shall be influenced by the bribe.

**Incompetency of Juror—Discovery after Verdict—New Trial—Discretion of Court—Alien.**

Even if the incompetency of a juror is not discovered until after verdict, such incompetency will not per se constitute ground for a new trial. A motion for a new trial on such a ground is addressed to the judicial discretion of the trial court, which should take into consideration the nature of the objection to the juror, what diligence the party exercised to ascertain the fact in due time, and the other circumstances of the case. Rule applied where a juror was incompetent because of alienage.

**Proceedings of City Council Admissible in Evidence.**

*Held,* that in this case the proceedings before the city council (of which

the defendant was a member) were admissible for the purpose of showing that the matter upon which the bribe was alleged to have been asked for was pending before that body, and in what way or manner it was pending.

**Indictment for Asking Bribe of One Partner—Conversation with Another Partner Admissible in Evidence.**

The indictment charged defendant with asking one Richards for a bribe with the understanding and agreement that his vote and official action should be thereby influenced in favor of the acceptance of a bid which the firm of Halvorson, Richards & Co. had submitted to the city council for the construction of a reservoir by the city. *Held* that, upon the facts, a conversation on the same subject which defendant had, on the day previous, with Halvorson, was admissible for the purpose of illustrating and explaining the conversation on the next day between defendant and Richards, when the crime charged is alleged to have been committed, the latter being but a continuation of the conversation with Halvorson, and the two being parts of the same transaction.

**Same—Member of City Council—Influence with Fellow Members.**

The asking for a bribe by a member of the city council, with the understanding or agreement that he would corruptly use it to bribe or influence the votes or official action of his colleagues, constitutes a crime under G. S. 1894, § 6349. The influence of the member of a public body over the official action of his colleagues is itself a part of his own official action and duty.

**Same—Giving and Taking Bribe—Accomplice.**

One who gives or offers a bribe is not, in law, an accomplice of the one who asks for it. Asking for a bribe and offering or giving a bribe are separate and distinct offenses.

**Same—Verdict Sustained by Evidence.**

Evidence *held* sufficient to justify the verdict.

**Same—Sentence not Cruel or Unusual.**

A sentence that the defendant be confined in state's prison for six years and six months is neither "cruel or unusual" nor excessive.

Defendant was convicted in the district court for Hennepin county of the crime of asking for a bribe to influence his vote and action as an alderman of the city of Minneapolis. From an order, Elliott, J., denying defendant's motion for a new trial, he appealed. Affirmed.

On the hearing of the motion for a new trial defendant read affi-

davits to the effect that, while the jury were deliberating, certain jurors left the room and went upon the floor above in the court house. The state read affidavits showing that directly above the jury room there is a sleeping room, bath room and closets for the use of the jury, connected with the main jury room by a stairway, and that the jury was at all times kept in these apartments.

On the trial, Halvor K. Halvorson, a witness for the state, testified that on the day before the commission of the offense charged in the indictment, he met defendant at a certain saloon, went into a back room with him, where defendant made the statement that, if witness would put up $10,000, his firm could have the contract. On the motion for a new trial, defendant read the affidavit of one C. A. Warner, that he was in the same saloon at the time in question, saw the parties there, that they remained at the bar about 15 minutes, and then went out, and that they never entered a back room in the saloon, or any room.

*Harrison & Noyes*, for appellant.

G. S. 1894, § 6349, under which defendant was indicted, defines the offense as asking for a bribe "upon the understanding and agreement" that the officer's vote shall be influenced thereby. The only reasonable construction of this statute is that the officer must ask a bribe from some person, and that the minds of the officer asking and the person asked must meet upon the proposition that the officer shall violate his official duty. The agreement or understanding need not go so far that the person asked assents to the request to contribute, but the minds of the two parties must meet upon the proposition that the officer shall be influenced to violate his official duty. As to definitions of the words "agreement" and "understanding," see Winslow v. Dakota Lumber Co., 32 Minn. 237; 27 Am. & Eng. Enc. 445; Dillon v. Anderson, 43 N. Y. 231; Barkow v. Sanger, 47 Wis. 500; Century Dict. tit. "Agreement"; 2 Am. & Eng. Enc. 16; 1 Chitty, Cont. 2; 1 Addison, Cont. 38; Hartford v. Jackson, 24 Conn. 514; Brown v. New York, 44 N. Y. 79; Lyman v. Robinson, 14 Allen, 242, 254.

As to defendant's challenge to the panel of jurors, we have a plain and well-defined practice provided by statute for the making

and trial of these challenges; but in the case at bar none of these challenges were excepted to as required by G. S. 1894, § 7356. Hence no issue was ever raised as to their sufficiency, and they stood as admitted, and no evidence could be received. It is therefore contended that the only authority the court had was to declare the challenge true. See Morrison v. Lovejoy, 6 Minn. 224 (319); State v. Lautenschlager, 22 Minn. 514.

The state's challenge to individual jurors on the ground of "actual bias" was insufficient. The specific cause of bias should have been stated. State v. Vaughan, 23 Nev. 103; People v. Thiede, 11 Utah, 241.

The juror A. W. Armitage, who was foreman of the jury, was not a citizen. A jury, as contemplated by our constitution, means twelve qualified jurors. State v. Everett, 14 Minn. 330 (439); People v. O'Neil, 48 Cal. 257; Bell v. State, 44 Ala. 393; Jackson v. State, 6 Blackf. 461; Bowles v. State, 5 Sneed, 361; Proffatt, Jury Trial, § 113; Perteet v. People, 70 Ill. 171; Cancemi v. People, 18 N. Y. 128. An alien cannot act as a juror. Guykowski v. People, 2 Ill. 476; Hill v. People, 16 Mich. 351; State v. Cole, 17 Wis. 695; Bennet v. State, 24 Wis. 57. Defendant, having no knowledge or suspicion that Armitage was an alien, did not waive his right to exclude this juror from the jury. In capital cases and grave crimes, it is generally held that defendant cannot waive his right and consent to a trial by a less number than twelve jurors. Proffatt, Jury Trial, § 113; Cancemi v. People, supra; People v. O'Neil, supra; Bell v. State, supra; Jackson v. State, supra; Bowles v. State, supra.

Defendant's right to raise any question of disqualification for actual bias or implied bias is not waived by failure to examine the juror; and, if it is unknown to defendant or his attorneys, it is good ground for a new trial. Bennet v. State, supra; Williams v. McGrade, 18 Minn. 65 (82).

Evidence as to the conversation between Halvorson and defendant on the day before the offense alleged in the indictment was inadmissible, as the only thing it could tend to prove was that defendant had committed another and different crime. State v. Masteller, 45 Minn. 128; People v. Sharp, 107 N. Y. 427; Coleman v.

People. 55 N. Y. 81; People v. Gibbs, 93 N. Y. 470; People v. Corbin, 56 N. Y. 363; Com. v. Jackson, 132 Mass. 16; Berghoff v. State, 25 Neb. 213; Barton v. State, 18 Ohio, 221; State v. Lepage, 57 N. H. 245; Hoberg v. State, 3 Minn. 181 (262); State v. Hoyt, 13 Minn. 125 (132); People v. Jacks, 76 Mich. 218; 2 Rice, Ev. 157; Com. v. Campbell, 155 Mass. 537; Com. v. Saulsbury, 152 Pa. St. 554; People v. O'Brien, 96 Cal. 171; Nixon v. State, 31 Tex. Cr. App. 205; Clark v. State, 47 N. J. L. 556.

Richards, the person whom defendant was charged with asking for a bribe, was an accomplice, and defendant's requests relating to the corroboration of accomplice testimony ought to have been given. Dever v. State (Tex. Cr. App.) 30 S. W. 1071.

*H. W. Childs*, Attorney General, and *James A. Peterson*, County Attorney for Hennepin county, for the State.

The contention of appellant as to the words "understanding and agreement" in the statute would wipe out therefrom the offense of asking for a bribe. We are at a loss to know how the offense of asking a bribe could be pleaded and proved if there had to be a corrupt agreement between the person that asked and the one from whom it was asked, before the offense could be committed. The very word "ask" implies that there is no agreement. The legislature certainly intended that there should be an offense of asking for a bribe. But if the contention of appellant is correct, then we challenge anybody to spell out the offense of asking for a bribe under the statutes of this state. If appellant's contention is true, then the public officials of this state could with impunity hawk their official votes, decisions and influence upon the streets. They could not be called to account until they found somebody who would be corrupt enough to agree with them in their criminal propositions. The law of this country is not in favor of any such contention. State v. Walls, 54 Ind. 561; Glover v. State, 109 Ind. 391; Com. v. Murray, 135 Mass. 530; State v. Dudoussat, 47 La. An. 977; People v. Squires, 99 Cal. 327; People v. Ah Fook, 62 Cal. 493.

As to defendant's challenge to the panel, the court passed upon the truth and falsity of the facts put in issue by the challenge. If counsel for defendant considered that the challenge to the panel

was admitted by the state by not denying the challenge, why did he not call the court's attention to that fact when the court asked him if he desired to argue the proposition? An attorney cannot submit an issue of fact to the court, and afterwards claim that there is no issue before the court.   Bowe v. Minnesota Milk Co., 44 Minn. 460.

As to the state's challenge for actual bias, whatever the law may be in other states, it has been held in this state that the simple interposition of a challenge for actual bias is sufficient upon which to try the issue as laid down by the statute.   This practice has obtained in Hennepin county, and has never been questioned.

As to the alienage of one of the jurors, the great preponderance of judicial decisions in this country is to the effect that the alienage of a petit juror is ground of challenge, but not for setting aside the verdict in a criminal case, though the fact was unknown to the accused when the jury was impaneled.   State v. Sackett, 39 Minn. 69; State v. Quarrel, 2 Bay, 150; Kingen v. State, 46 Ind. 132; Kohl v. Lehlback, 160 U. S. 293; Chase v. People, 40 Ill. 352; Presbury v. Com., 9 Dana, 204; State v. Vogel, 22 Wis. 449; State v. Jackson, 27 Kan. 581; Jeffries v. Randall, 14 Mass. 205; Costly v. State, 19 Ga. 614; State v. Pickett, 103 Iowa, 714; King v. Sutton, 8 B. & C. 417; People v. Scott, 56 Mich. 154; Daniel v. Guy, 23 Ark. 50; State v. Kaufman, 51 Iowa, 578; Amherst v. Hadley, 1 Pick. 38; Montgomery v. State, 3 Kan. 263; Quinebaug v. Leavens, 20 Conn. 87.

As to the admissibility of the conversation between defendant and witness Halvorson on the day before the commission of the crime charged in the indictment, we understand the law to be that any statement or conversation had by defendant before the commission of the crime, when the statement or conversation relates to the commission of the crime, is admissible to show intent.   Kramer v. Com., 87 Pa. St. 299; King v. Ellis, 9 Dowl. & R. 174; Com. v. Riggs, 14 Gray, 376; 1 Phillipps, Ev. 767; Archbold, Crim. Pl. (10th Ed.) 109; People v. Wood, 3 Park. Crim. 681; 3 Greenleaf, Ev. § 15; Guthrie v. State, 16 Neb. 671.

As to defendant's contention that Richards was an accomplice, it seems to us that, if a person from whom a bribe is asked is

an accomplice when he refuses to give it, then a person who is held up on the street at night by a highwayman is an accomplice. In both cases the person robbed and the person solicited furnish subjects upon which the crime could be committed, but that does not make them accomplices. In order to be an accomplice a person must be a criminal. He must do a criminal act with a criminal intent, and the person who is merely asked for a bribe may refuse it and be perfectly innocent of any offense.

MITCHELL, J.[1]

The defendant was indicted under section 65 of the Penal Code (G. S. 1894, § 6349) for having asked for a bribe from one Charles H. Richards, as a member of the firm of Halvorson, Richards & Co.,

"Upon the understanding and agreement that his, the said George H. Durnam's, official vote and action as a member of said city council [of Minneapolis], as aforesaid, should be influenced thereby in the following manner, to wit, in favor of the acceptance by the said city council of a certain bid theretofore duly submitted and proposed by the said Halvorson, Richards & Company to said city council for the construction of a reservoir and boulevard by the said city of Minneapolis," etc.

The trial resulted in a conviction, and from an order denying his motion for a new trial the defendant appealed.

1. The first five assignments of error relate to the action of the court in reference to the defendant's challenges to the panel of petit jurors. The record shows that when the case was called for trial the following proceedings were had, viz.:

"Defendant's Counsel: I have a challenge here to the panel, and the same challenge to the special venire called for last Monday of fifty names. The Court: You do not care to argue that now? Defendant's Counsel: No, sir. The Court: Challenge found not true. Defendant's Counsel: Defendant excepts."

The challenges so made and filed with the clerk were on the ground that the list of petit jurors and the special venire were not selected as provided by G. S. 1894, § 5611. This is absolutely all that the record discloses on the subject. In his certificate to the bill of exceptions the trial judge states as follows:

[1] BUCK, J., absent, took no part.

"The challenges to the panels were made and fully argued at a former trial of a similar case, and decided by another judge of this court. When the questions were raised on this trial, it was stated that no argument would be made on the same. The challenges were made and ruled on by the court with the understanding that they were denied, and that a record simply was being made."

Defendant's counsel do not deny the truth of any part of this statement except that which alleges that the challenges to the panels were fully argued at a former trial of a similar case, their claim being that, although made, denied by the state, and evidence introduced, the challenges were not argued at all.

The course of procedure where a challenge to the panel is interposed is prescribed by G. S. 1894, §§ 7356–7359. When this challenge was interposed, counsel for the state should have excepted to it, or denied it, or first excepted, and, if that was disallowed, then denied the facts alleged in the challenge, and the court should then have proceeded to try the question of fact. According to the record, as soon as the counsel interposed the challenge, and before counsel for the state had either excepted to it or denied it, the court, on its own motion, took for granted, as indicated by his question, that counsel for the defendant, for some reason, would not care to argue the matter, to which counsel promptly assented. This clearly indicates that the record is incomplete, and that both court and counsel were acting upon something which had preceded, and which was understood between themselves, but which does not appear in the record.

The place for facts to appear is in the "case" or bill of exceptions, and not in the judge's certificate; and the general rule is that the court cannot cure a ruling which is erroneous according to the former by attempting to state additional facts or explanations in the latter. But in this case the statements contained in the certificate so dovetail in with the evidently incomplete record, and throw so much light upon it, that, read in that light, the record is perfectly intelligible, and makes clear that the understanding of both court and counsel was that, as this challenge was made upon the same grounds as the challenge in a former similar case, and the evidence in support of it would be the same, it should be considered

denied, and overruled pro forma, so that defendant might save the question in case of an appeal. Counsel's answer was certainly calculated to convey this impression.

He suggests that, as the challenge had been neither excepted to nor denied by the state, there was nothing for them to argue, and that it was not his duty to advise the counsel for the state or the court as to the proper procedure. But no court would have understood counsel's answer as meaning what he now claims, viz., that he did not wish to argue the question because there was nothing before the court to argue. On the contrary, it would, under the circumstances, understand counsel as meaning just what the court says it did, and as we have no doubt he did mean, viz. that, in view of the former rulings of the court on the question, he expected an adverse decision, but wished to save it on the record for the purposes of an appeal.

A very loose and informal practice was adopted both on the trial and in making up the bill of exceptions, but we think that it is clearly apparent that the meaning of both counsel and court was as stated above.

2. There are several assignments of error relating to challenges to individual jurors. The state challenged certain jurors on the ground of "actual bias." It is urged that this is not sufficiently specific; that G. S. 1894, § 7372, requires that in a challenge for actual bias the cause stated in the second subdivision of section 7368 shall be alleged. No such practice has ever obtained in this state, so far as we know. We are satisfied that the general understanding of the courts and bar is that a challenge generally "for actual bias" is sufficient in form, and that section 7372 does not mean that the challenge shall recite the second subdivision of section 7368, but merely refers to the latter for a definition of actual bias.

But it is unnecessary to pass on this question, because defendant made no objection to the sufficiency of the challenges, but joined issue by denying them, and then proceeded with the trial of them on the evidence.

There is nothing in the point that the court erred in finding these challenges true. The decision of triors is not reviewable, and the

same is true of the decision of the court when it acts in place of triors. State v. Mims, 26 Minn. 183, 2 N. W. 494, 683.

3. It is urged that the indictment is insufficient for the reason that it does not state with whom the "understanding and agreement" were made that defendant's official vote and action should be influenced thereby, or that any understanding and agreement to that effect were made with any person. This contention is based entirely upon the use in the statute of the words "upon any agreement or understanding." It is argued that these words necessarily imply the meeting of two minds, and hence, to constitute an offense under this statute, the minds of the officer asking the bribe and of the person from whom it is asked shall meet upon the proposition that the officer will violate his official duty.

If this contention is sound, it would necessarily follow that no public officer would be guilty of the offense of asking for a bribe unless he found a person who would and did corruptly agree to pay it. There is no middle ground. The inevitable logic of counsel's position is that there can be no conviction of an officer for asking a bribe unless facts can be shown which constitute a crime on the part of the one from whom the bribe was asked. Such a construction would practically nullify the statute altogether, for, if the person of whom the bribe was solicited proved to be honest, and refused to entertain the proposition, the officer soliciting the bribe would be guilty of no offense, while, on the other hand, if he was dishonest, and agreed to pay the bribe, he would not be likely to inform on the officer, and by so doing incriminate himself.

This is not the correct construction of the statute. The meaning to be given to the words "agreement" and "understanding" depends upon the connection in which they are used; and in construing a statute it is a very unsafe practice to adhere strictly to lexicographers' definitions of words standing alone, and severed from their context. To constitute the offense under this statute of asking for a bribe, it is not necessary that the party solicited shall consent to give it. All that is necessary is that the party asking the bribe is ready and willing to enter into a corrupt agreement or understanding to accept it. People v. Squires, 99 Cal. 327, 33 Pac. 1092. See, also, Com. v. Murray, 135 Mass. 530.

4. This brings us to the consideration of the assignments of error relating to the conduct and qualifications of certain members of the jury which tried the case.

One Armitage was called as a juror, and was examined by defendant's counsel as to his residence, business, and whether he had any acquaintance or business relations with counsel for the state. Counsel, without pursuing the examination any further, or interposing any challenge, expressed himself as content with the juror. Counsel for the state, after inquiring briefly of the juror as to his acquaintance or business relations with the defendant or the other members of the city council, also expressed himself as content, and Armitage was then sworn as a juror, without objection by either party. After verdict, and on motion for a new trial, the defendant presented affidavits tending to show that Armitage was not a qualified juror, not being a citizen of the United States; also that prior to this trial, and immediately after the disagreement of the jury on a former trial of the case, he stated that he wished he had been on that jury; that he would have done all he could to convict the defendant; also that after the rendition of the verdict on the last trial he stated that he "was glad to get a chance to sit on the jury; that he knew defendant pretty well,"—implying that he was glad to have a chance to convict him. Armitage made an affidavit, in which he positively denied having made either of these statements, in which he was corroborated by the affidavits of several persons who were present on the occasion on which the statements were alleged to have been made.

Upon these conflicting affidavits it was for the trial judge to determine on which side the truth was.

However, it stood practically admitted that at the time of the trial Armitage was not a citizen of the United States, but had merely declared his intention of becoming such.

The doctrine is as old as the common law that no objection could be taken to any incompetency of a juror after he was accepted and sworn. Wharton's Case, Yelv. 24. While this doctrine may have been somewhat modified in modern times, yet the general rule (and the better one on principle) still is: First, no objection can be taken to any incompetency in a juror (existing at the time he was called).

after he is accepted and sworn, if the fact was known to the party, and he was silent; second, and, even if not discovered until after verdict, the cause of challenge will not per se constitute ground for a new trial. In such case only the discretion of the court can be appealed to, which will consider the nature of the objection to the juror, what diligence the party exercised to ascertain the fact in due time, and the other circumstances of the case. 1 Bishop, Cr. Proc. §§ 946, 949a; State v. Davis, 80 N. C. 412; George v. State, 39 Miss. 570; Beck v. State, 20 Oh. St. 228; Gillespie v. State, 8 Yerg. 507; State v. Quarrel, 2 Bay, 150; State v. Jackson, 27 Kan. 581; Chase v. People, 40 Ill. 352; State v. Vogel, 22 Wis. 449.

Some of the cases seem to hold that under no circumstances, even where the objection was not discovered until after verdict, will the incompetency of the juror be a ground for a new trial. We would not go that far. We think it is a matter addressed to the sound judicial discretion of the trial judge, who should take all the circumstances above referred to into consideration.

In this case, although the court permitted defendant's counsel to examine the juror preliminarily, in order to determine whether he would interpose a challenge, yet counsel never made any inquiry as to the citizenship of the juror, but accepted him without interposing any challenge; and that, too, at a time when, owing to the recent amendment of our constitution, the question of citizenship was frequently called to the attention of the courts and the bar, in order to ascertain the qualification of both grand and petit jurors. The disqualification by reason of alienage is one which does not go to either the intelligence or the impartiality of a proposed juror. In view of the nature of the objection and the lack of diligence to ascertain the juror's competency, we are clearly of opinion that the trial court committed no error in denying a new trial on the ground now under consideration.

There is a very clear distinction between waiving a trial by jury and waiving an objection to the competency of a juror. A defendant indicted for a felony can waive the latter, although it may not be competent for him to waive the former. This doctrine does not at all infringe upon the constitutional guaranty that the right of

trial by jury shall remain inviolate.   See Kohl v. Lehlback, 160 U. S. 293, 16 Sup. Ct. 304.

What has been said as to the statements alleged to have been made by the juror Armitage tending to show actual bias on his part is equally applicable to similar statements alleged to have been made by the jurors Washburn and Campbell.   Defendant's counsel merely asked them the same general questions as to their residence, business and personal relations with the counsel for the state, and then accepted them without interposing any challenge. The affidavits submitted by the defendant were sufficiently rebutted by counter affidavits on part of the state to make the question one of fact for the trial court, who, under the circumstances, occupies a position somewhat analogous to that of the trior before trial.

We find nothing substantial in the charges of misconduct of the jurors while deliberating on their verdict.   The affidavits of jurors as to what took place in the jury room were inadmissible for the purpose of impeaching their verdict.   The claim that they were allowed to separate during their deliberation was sufficiently rebutted or explained by the affidavits of the jurors themselves and of the deputy sheriff who had them in charge.

5. Next in order are the assignments of error relating to the admission of evidence.

The proceedings before the city council, including the reports of the committee, both majority and minority, and the bid of Halvorson, Richards & Co., were competent for the purpose of showing that the matter upon which the bribe was alleged to have been solicited, to wit, the construction of a reservoir and boulevard, was pending before the city council, and in what way or manner it came to be pending.   These proceedings showed that the matter pend-.ing before the council was not merely whether a reservoir and boulevard should be constructed, but also, and perhaps mainly, whether the work should be let by contract or done by the city itself by day labor, and that Halvorson, Richards & Co. was a bidder, and the lowest bidder, for the contract.

The mere fact that the report of the minority of the committee contained some arguments in favor of doing the work by contract, which counsel for the state might attempt to use against the de-

fendant in an illegitimate way, would not render the evidence incompetent. It would be for the court to instruct the jury for what purposes alone they might consider it.

Conceding, without deciding, that the other bids for the work were immaterial, it is impossible to conceive how the defendant could have been prejudiced by their admission.

The evidence for the state was to the effect that on May 2, Halvorson, the senior partner of the firm of Halvorson, Richards & Co., had a conversation with the defendant in regard to the construction of the proposed reservoir and boulevard, in which defendant stated to him that "there was one way to get that work," and, on being asked what it was, replied, "If you put up $10,000, you can get it," and that after some further conversation on the subject Halvorson said to defendant that he would see his partner, to which defendant replied, "If you will, you had better meet me at the Nicollet House at eight o'clock to-night;" that Halvorson went to the Nicollet House that evening, and found his partner Richards there, and told him what defendant had said, and then introduced him to the defendant; that defendant and Richards had no conversation on the subject that night, but that the next morning Richards met defendant at the city hall, and then and there had a conversation with him, which was opened by Richards saying to him that they had concluded that they could not afford to pay any money for the contract; that he did not think they could afford to pay $10,000 for the contract. This conversation continued, in the course of which, according to the state's evidence, defendant asked Richards for a bribe, which alleged asking constituted the crime charged in the indictment.

Counsel assign as error the admission of the conversation between the defendant and Halvorson on May 2, on the ground that it tended to prove the commission of a distinct and separate crime, to wit, asking Halvorson for a bribe. We do not see why this evidence was not admissible under the rule which, in certain cases, permits evidence of other similar offenses for the purpose of proving criminal intent. See State v. Wilson, 72 Minn. 522, 75 N. W. 715.

But it is not necessary to resort to this rule in order to sustain the admission of this evidence. The conversation between defend-

ant and Halvorson on May 2, and that between defendant and Richards on May 3, were parts of the same transaction. The latter was but a continuation of the former. The former was admissible for the purpose, if no other, of explaining and illustrating the latter. The court carefully explained to the jury the purposes of the evidence, and instructed them that it could not be made the basis of a conviction of the defendant for asking a bribe from Halvorson; that, under the indictment, he could only be convicted of asking a bribe from Richards, as charged.

6. There are numerous assignments of error as to portions of the court's charge and its refusals to charge as requested. Many of these are based upon the erroneous assumption that to constitute the crime charged there must be a meeting of minds, or a mutual understanding or agreement, between the person asking the bribe and the person of whom it is asked. This has been already fully discussed in considering the sufficiency of the indictment.

The court charged the jury that it was immaterial whether defendant's own vote was to be affected by the bribe or not; if he asked for the money, intending and understanding that he would take the money, and use it for the purpose of influencing the action of other members of the council, and corruptly obtaining the contract for these people (Halvorson, Richards & Co.), then he would be guilty of the crime charged in the indictment.

The crime, as defined by the statute (G. S. 1894, § 6349), is

"Asking," etc., "upon any agreement or understanding that his vote, opinion, judgment, action, decision or other official proceeding shall be influenced thereby, or that he will do or omit any act or proceeding or in any way neglect or violate any official duty."

The indictment charges that defendant asked the bribe

"Upon the understanding and agreement that his * * * vote and official action * * * should be influenced thereby."

We are of opinion that both the statute and the indictment are broad enough to include the case of a member of an official body asking for money or other valuable things for the purpose of thereby corruptly bribing or influencing the votes of his colleagues. An alderman's constituents are entitled to his influence with his col-

leagues in the city council as much as they are to his vote. The one is as much within the sphere of his official action as is the other. The statute never intended that a public officer could, for a consideration, corruptly use his influence in bribing his colleagues to vote for or against a measure, and yet be exempt from criminal prosecution, provided his own vote was not to be influenced thereby.

Counsel is in error in claiming that there was no evidence to which this instruction was applicable. Richards testified that defendant stated

"That, as far as he was concerned, he would be willing for us to have the contract without putting up anything, but that there were sixteen of them in the company, in the crowd, and that they had agreed that there shouldn't one of them accept money unless they all had some."

The court refused to give to the jury certain requested instructions upon the proposition that a conviction cannot be had upon the uncorroborated testimony of an accomplice. These requests were made upon the theory that Richards, or both Richards and Halvorson, were accomplices of the defendant in the commission of the offense charged, or at least that there was evidence tending to prove that fact. If there is any evidence tending to implicate Halvorson or Richards, even morally, with the crime charged, the most that can possibly be claimed for it is that it tended to prove that they were inclined to entertain defendant's demand favorably, and would have been willing to accede to it if the sum demanded had not been so large.

Even if they had fully acceded to defendant's demand, and had paid or offered to pay the sum demanded, although they would have been guilty of an independent and separate crime, they would not have been, within the meaning of the law, accomplices of the defendant in the commission of the crime of asking for a bribe. An accomplice, in legal signification, is one who co-operates, aids or assists another in the commission of a crime, either as principal or accessory. The general test to determine whether a witness is or is not an accomplice is, could he himself have been indicted for the offense either as principal or as accessory? If he could not, then he is not an accomplice. Com. v. Wood, 11 Gray, 85. Each

of the two parties to a transaction may be guilty of a crime, and yet, if the two crimes are separate and distinct crimes, the one is not the accomplice of the other. Thus, suppose A. asks B. for a bribe, and B. pays it. A. is guilty of the crime of asking a bribe, and B. of the crime of giving one. But the two crimes are entirely distinct, and neither party could be indicted, either as principal or accessory, for the crime committed by the other. Such a case would not be within the statute [2] forbidding a conviction on the uncorroborated evidence of an accomplice, although, of course, the moral delinquency of either, if called as a witness against the other, would be a fact going to his credibility, which a jury should take into consideration. State v. Sargent, 71 Minn. 28, 73 N. W. 626. See, also, Regina v. Boyes, 1 Best & S. 311.

7. It is further claimed that the evidence is insufficient to support the verdict. We have, to the best of our ability, given the record the careful examination which the importance and gravity of the case demanded, keeping in mind that it is a criminal, and not a civil, action. As might be expected, the direct evidence was confined to the testimony of Halvorson and Richards on the one side and of the defendant on the other. It would be worse than useless —in fact, misleading—to enter upon a discussion of the evidence, unless it was done exhaustively; and this could not be done within any reasonable limits. Therefore we will not attempt it. Our conclusion is that it justified the verdict, which was evidently the view of the trial judge who saw and heard the witnesses on the stand.

8. The "newly discovered evidence" of Warner was merely cumulative, and tending to contradict the testimony of Halvorson in some particulars, and generally was not of such a character as to require the trial court, in the exercise of a sound judicial discretion, to grant a new trial, even conceding that it would have justified it in doing so.

9. The maximum punishment, under the statute, for this crime is imprisonment in the state's prison for ten years. The sentence of the court was that the defendant be confined in the penitentiary for six years and six months. It is urged that this sentence is "ex-

[2] G. S. 1894, § 5767.

cessive, unjust and contrary to the spirit and intent of the law." The sentence is severe, but the crime is grave, and one which tends, probably more than any other, to sap the very foundation of all civil government. It is for the legislature, and not for the courts, to determine what the punishment for crime shall be, provided it is neither cruel nor unusual.

The assignments of error are very numerous, but what has been said covers all points of any substance urged by counsel.

We find no error in the record, and the order denying a new trial is affirmed.