EZEQUIEL FORASTIERI, Petitioner and Appellant, v. FÉLIX CALZADA, WARDEN, ETC., Defendant and Appellee.

Nos. 7598, 7599, 7600, and 7601. Argued May 5, 1938.—Decided May 31, 1938.

*A. Lastra Chárriez* and *A. D. Marchand Paz* for appellant. *R. A. Gómez, Prosecuting Attorney* for appellee.

Mr. Chief Justice Del Toro delivered the opinion of the court.

On June 10, 1937, Ezequiel Forastieri, through his attorneys, filed in the District Court of Humacao, four petitions for *habeas corpus,* and in each of them he alleged in substance that he was imprisoned in the district jail without knowing the reasons for his imprisonment; that the warrant on which his arrest was made was illegal because there was no reasonable or probable cause to support it; that the district attorney who issued the same made no investigation and had no evidence in his possession upon which to base his action; and that notwithstanding this, on the basis of a single transaction he had instituted several prosecutions against the petitioner, fixing his bail bond at $5,000, a sum which was excessive inasmuch as the petitioner was insolvent.

Thereupon the district judge ordered the warden to produce the body of the petitioner and report as to the cause of his imprisonment. At the request of the petitioner, the hearing on the writ, which had been served, was continued to June 24, 1937.

The hearing having been held on that day, the return of the warden was filed in the record from which it appears that the order which gave rise to the arrest of the petitioner in case No. 7598, literally copied, reads as follows:

"In the District Court for the Judicial District of Humacao, P. R. —United States of America, President of the United States, SS: The People of Puerto Rico *versus* Ezequiel Forastieri.—The People of Puerto Rico to the Warden of the Municipal Jail of Caguas or *Ditto*.

Humacao. An order having been entered by this Court on this day for the arrest of Ezequiel Forastieri to answer for a charge brought against him of a violation of section 131 of the Penal Code (felony), in that one day in the month of April 1937, in Caguas, within the Judicial District of Humacao, P. R., he illegally and maliciously offered, promised, and gave a bribe in cash to Manuel Quintero, a witness for the prosecution, who was to be called upon to testify as such in the case of People v. Ezequiel Forastieri, a prosecution for murder pending before the District Court of Humacao, thereby inducing him to give false testimony concealing the truth, when he should be called upon to testify as such witness for the prosecution, you are hereby ordered to take him in to custody and hold him until he be legally released. Bond $5,000. Given under my hand this 9th day of June, 1937. (Sgd.) Miguel García González, District Attorney.''

The orders in cases Nos. 7599, 7600, and 7601 were similar to the above, except as to the persons to whom the bribe was offered, who were respectively Lorenzo Ramos, Joaquín Vázquez, and Emilia Nieves.

On the same day of the hearing the district court denied the four petitions. Thereupon Forastieri appealed to this Supreme Court. He filed a single brief on the four appeals which were heard on the 5th of this instant May, with the attendance of the appellant by his attorney and of the prosecuting attorney (Fiscal) who opposed the appeals orally and in writing. The cases, therefore, will be considered in a single opinion and decided by separate judgments.

The appellant maintains that the judgments appealed from should be reversed because the evidence of the prosecution if legally analyzed, is insufficient to show the existence of a probable cause for his detention.

The evidence introduced was the same in all four cases, the bribe with respect to Quintero being taken as indicative of the presence of similar circumstances in the cases which related to Ramos, Vázquez, and Nieves. The district attorney introduced the information filed against the appellant Forastieri, which charged him with the commission of a

crime of murder and on the back of which there appeared as witnesses for the prosecution, Manuel Quintero, Lorenzo Ramos, Joaquín Vázquez, and Emilia Nieves; the provisional bond of $5,000 furnished in that case by the defendant; the information filed against Forastieri for a violation of section 131 of the Penal Code with regard to Quintero; the statement given by the latter on June 2, 1937, in the investigation which led to the bringing of said information on the ground of a violation of section 131 of the Penal Code; and the accused's own statement. He said that, in addition to Quintero's statement, he had other statements from witnesses whose names appear on the back of the information. While he was testifying, information was obtained from the clerk of the court to the effect that no charge had been filed against Quintero.

Petitioner Forastieri then testified. He stated that he made a living from his own work. He was a school teacher until 1932, and at present was engaged in the management of some savings belonging to a sister of his, some $2,000. He has a parcel of land which he bought for two or three thousand dollars.

The district attorney introduced the record of a proceeding with regard to a license for carrying a weapon, instituted by Forastieri in 1935 upon a sworn petition in which he said that he was engaged in the administration of property and in the business of lending money, and that he had to make daily rounds on foot in the town of Caguas and other towns, often carrying with him large sums of money. There was also introduced a certificate of the recording of a piece of property of the petitioner, valued at $3,000, and an affidavit of Juan Carrió, Manager of the Caguas Branch of the Banco Popular, stating that the petitioner opened his current account with $1,095.31, and that he had on June 10, 1937, a balance in his favor amounting to $4,305.25.

In his statement before the district attorney, Manuel Quintero deposed as follows:

꞉ He said that in the investigation of the cause for murder he had testified the truth. Later Forastieri called him "to tell me that I would derive no benefit from his being sent to jail because the person killed was already dead and that by his going to jail the deceased was not going to come back to life; that if I changed my testimony and gave another, which would not prejudice him to such an extent, he would give me a sum of money when I gave the testimony and the rest after the trial . . . . He told me that I should testify that Natalio Díaz attacked him with a machete; that he retreated, and when he attacked him for the second time he, Forastieri, drew his revolver from a pocket in the car, fired a shot, and was unfortunate enough to wound him, because then it was self-defense and in that way no jury would send him to jail . . . . I answered that I could not do that because I had already made a sworn statement, and Forastieri then asked me if that was my only objection. I said that I had a few others. Then he told me that he had someone in the court of Humacao; that if we should change our statements . . . . he could cause the suppression of the statements given in the case by the four witnesses who up to that time had testified."

He went on to relate another meeting between him and Forastieri in which the latter burned a paper that the witness believed it contained his prior statement, and other meetings in which Vázquez Torres, and Ramos took part. Referring to the one in which Vázquez intervened, he said: "That was the time when he gave us four dollars for both of us," and as to the one in which "Felino Torres and Lorenzo Ramos" took part, he said: "He then offered Felino and Lorenzo a certain sum of money before the trial and a further sum after they should have changed their testimony."

The statement concluded thus:

"Q. Has there not been another interview?—A. On Monday of this week Forastieri called me to his house to tell me that he had learned that the witnesses had been summoned by the court, the

district attorney, he told me, for a new investigation. I told him that that was so, that we had all been cited for the following Tuesday. Then he said to me: 'Well, you know what I have told you, if they call you for a new investigation it is because the district attorney does not have the sworn statements which you gave and you know how you are to testify.'—Q. And on the day that you were cited by the district attorney?—A. I testified exactly as I had testified the first time, and as I have testified today with regard to the facts in the case of the killing of Natalio.—Q. Did Forastieri ever speak to you about any specific amount of money in order to change your testimony?—A. No, sir, he never set a price.—Q. After testifying in the district attorney's office, did you not speak to him?—A. No, sir.''

Following the many decisions on the subject, it was said in *Ex parte Vega*, 46 P.R.R. 476:

''We are quite agreed with the *Fiscal* of this court that on a petition for a lack of probable cause there is no necessity for the prosecution to make out a complete case for a conviction but only that there is a probability or fair probability that the case may be submitted to the jury for its verdict.''

Did the district attorney in the instant case show the existence of that probability?

The appellant insists that he did not. He argues that the only evidence introduced consisted in the declaration of an accomplice and, as section 253 of the Code of Criminal Procedure (1935 ed.) provides that a conviction can be had on the testimony of an accomplice, unless he is corroborated by other evidence, which in itself, and without the aid of the testimony of the accomplice, tends to connect the defendant with the commission of the offense, it is manifest that there was no evidence nor a scintilla of evidence to justify his imprisonment.

If Quintero was really the accomplice of Forastieri, the latter would be right. Was he such? In summing up the decisions on the subject it is said in 8 Am. Jur., Bribery, par. 34:

"Whether the giver and taker of a bribe are accomplices, one of the other, within the rule requiring corroboration of an accomplice's testimony, the courts are not in accord. One group takes the view that they are not accomplices for the reason that bribegiving and bribetaking are distinct offenses for which the person other than the defendant could not be indicted as principal or accessory. Other courts, by refusing this test and reasoning that a person is an accomplice in a crime by reason of the part he takes in it, reach the conclusion that the person who gives a bribe is an accomplice of the person who takes the bribe, and vice versa."

In Puerto Rico the law separates the offenses, describing them and punishing them as different crimes, thus:

"Sec. 131.—(137 Cal.) *Bribing Witnesses.*—Every person who gives, offers, or promises to give, to any witness, or person about to be called as a witness, any bribe, upon any understanding or agreement that the testimony of such witness shall be thereby influenced, or who attempts by any other means fraudulently to induce any person to give false or withhold true testimony, is guilty of a felony."

"Sec. 132.—(138 Cal.)—*Witnesses receiving bribes.*—Every person who is a witness or is about to be called as such, who receives or offers to receive, any bribe, upon any understanding that his testimony shall be influenced thereby, or that he will absent himself from the trial or proceeding upon which his testimony is required, is guilty of a felony."

That being so, the jurisprudence which in our opinion should be applied is that which holds in the negative.

In 73 A.L.R. 389 there is a footnote upon the subject. It is said therein, with reference to the State of California:

"In *People* v. *Coffey* (1911) 161 Cal. 433, 39 L.R.A. (N.S.) 704, 119 Pac. 901, it was held that the receiver of a bribe is an accomplice of the taker and vice versa, notwithstanding the fact that the statute makes the giving and the taking two separate offenses. In holding unsound the contrary view, the court said: 'The commonest of these errors may thus be expressed: The law declares that all persons concerned in the commission of a crime, whether they directly commit it, or aid and abet in its commission, or advise and encourage its commission, are principals. They are, of course, accomplices.

Therefore an accomplice is one who may be indicted for the same crime as that charged against the person on trial, and therefore, if he cannot be charged with the same crime, he is not an accomplice. Here is epitomized the reasoning of such cases as *State* v. *Durnam* (1898) 73 Minn. 150, 75 N. W. 1127, 11 Am. Crim. Rep. 179, and the fallacy of the reasoning must be obvious. One is an accomplice in a crime because of the part that he has taken in it, not because he may be indicted as a principal. The latter is a mere accidental circumstance, depending upon the language of the statute, and in no way affecting the true touchstone; namely, the part which the accomplice has taken in the offense.' ''

And then it is added:

''But notwithstanding the fact that the California supreme court apparently laid down the contrary rule in the *Coffey* Case (Cal.) *supra,* it has been held in *People* v. *Power* (1920) 50 Cal. App. 436, 195 Pac. 456, in which par. 1111 of the Penal Code, adopted since the *Coffey* Case (Cal.) *supra,* defining an accomplice as one 'who is liable to prosecution for the identical offense charged against the defendant on trial in the case in which the testimony of the accomplice is given' was construed, that the giver of a bribe is not for that reason the accomplice of the receiver and vice versa. Such holding is upheld on the ground that asking a bribe or offering a bribe of itself is sufficient to make out the crime of bribery, regardless of whether the bribe is subsequently given or received; and the fact that it is so given or agreed to be given, or received or agreed to be received, does not detract from the criminal responsibility arising from the mere asking or offering. It is further argued that, since the other party cannot be an aider and abetter in the asking or offering, he cannot be convicted of that crime, and is therefore not an accomplice. In that case the court said: 'As we have seen, among other offenses charged against the defendant, is the crime of asking a bribe. That offense could be committed without any co-operation on the part of the complaining witness, and was completed the moment the bribe was asked. It was not necessary, therefore, that the person of whom the bribe was solicited should consent to give it, or that he should have any kind of an agreement or understanding with the person asking for it. . . . The complaining witness, therefore, could not be convicted as an aider or abetter to the crime of asking a bribe, though he doubtless could be convicted as an aider or abetter in the crime of receiving a bribe.' This

statement was approved in *People* v. *Lips* (1922) 59 Cal. App. 381. 211 Pac. 22, and *People* v. *Anderson* (1926) 75 Cal. App. 365, 242 Pac. 906, cases where the giver of the bribe has been held not to be an accomplice of the receiver.

"In the above-mentioned later cases, the persons charged with the crime of bribery had initiated the entire transaction by asking the bribe before any offer had been made by the giver, and there seemed to be an element of extortion connected with the asking. They may, therefore, be distinguished from the Coffey Case, since they cannot be said to have decided the question arising, as in that case, where the accomplice, rather than the defendant charged with receiving the bribe, initiates the transaction by first offering the bribe. Under the statutory definition of accomplice, however, the reasoning in the above cases, carried to its logical conclusion would possibly lead to the same result in all bribery cases."

The appellant maintains in a supplemental brief which he filed, that the change in the jurisprudence of California was due to an amendment in the statute, which amendment has not been made in Puerto Rico, citing as authority the same note from A.L.R. which we are following in this case.

. We have just transcribed what is said by the author and we are therefore in a condition to fix its scope. What the amendment did was to define by law something in harmony with what had existed before, but the definition of which was made necessary because of a different interpretation. In Puerto Rico, however, where the question is a new one, we are in a position to follow the true legislative intention without the necessity of a statutory definition.

The negative is also supported by decisions from other states. We consider it sufficient to refer to one of them from Minnesota, as it is cited in 73 A.L.R. 392, to wit:

"Likewise, in *State* v. *Durnam* (1898) 73 Minn. 150, 75 N. W. 1127, 11 Am. Crim. Rep. 179, which appears to be the source of the reasoning used in the later California cases, the court said: 'Each of the two parties to a transaction may be guilty of a crime, and yet, if the two crimes are separate and distinct crimes, the one is not the accomplice of the other. Thus, suppose A asks B for a bribe, and B pays it. A is guilty of the crime of asking a bribe,

and B of the crime of giving one. But the two crimes are entirely distinct, and neither party could be indicted, either as principal or accessory, for the crime committed by the other. Such a case would not be within the statute forbidding a conviction on the uncorroborated evidence of an accomplice although, of course, the moral delinquency of either, if called as a witness against the other, would be a fact going to his credibility, which a jury should take into consideration,' even though there was no statutory definition of an 'accomplice,' in that state, as there was in the later California cases.''

As Manuel Quintero was not an accomplice, therefore his testimony is sufficient to show that there existed probable cause for the detention of Forastieri and consequently that the trial court did not commit the error attributed to it.

The other ground of the petition for habeas corpus—excessive bond—is not discussed in the brief. We know the evidence. The petitioner does not lack property of his own nor connections. He did not show that he could not in fact put up the bond fixed by the district attorney. Inasmuch as the informations have already been filed' and the cases are under the jurisdiction of the district court which reduced the bonds and which has a discretion at any time to act upon the matter in accordance with the surrounding circumstances, it is unnecessary for us to take any steps regarding this point.

The judgments appealed from should be affirmed.

Mr. Justice Travieso took no part in the decision of this case.