EZEQUIEL FORASTIERI, demandante y apelante, *v.* FÉLIX CAL-
ZADA, ALCAIDE DE LA CÁRCEL DE DISTRITO DE HUMACAO, de-
mandado y apelado.

Núms. 7598, 7599, 7600 y 7601.—*Sometidos:* Mayo 5, 1938. *Resueltos:*
Mayo 31, 1938.

*A. Lastra Chárriez* y *A. D. Marchand Paz*, abogados del apelante;
*R. A. Gómez, Fiscal*, abogado de El Pueblo, apelado.

EL JUEZ PRESIDENTE SEÑOR DEL TORO emitió la opinión del
tribunal.

El diez de junio de 1937, Ezequiel Forastieri por medio
de sus abogados radicó en la Corte de Distrito de Humacao
cuatro peticiones de hábeas corpus alegando sustancialmente
en cada una de ellas que se hallaba detenido en la Cárcel del
Distrito ignorando los motivos de su detención, que el man-
damiento librado para su arresto era nulo por no existir causa
razonable ni probable que lo justificara, que el fiscal que lo
expidiera no practicó investigación ni tenía prueba alguna en
su poder en que fundar su actuación y eso no obstante a base
de una sola transacción había iniciado varias causas contra
el peticionario, señalándole para que éste pudiera obtener su
libertad provisional una fianza de cinco mil dólares que resul-
taba excesiva por ser el peticionario insolvente.

Acto seguido ordenó el Juez del Distrito al Alcaide de la Cárcel que le presentara el cuerpo del peticionario y le informara sobre la causa de su prisión. A gestiones del peticionario la vista del auto diligenciado fué transferida para junio 24, 1937.

Celebrada en dicho día, quedó en los autos el informe del Alcaide del que resulta que el mandamiento que dió origen a la detención del peticionario en el recurso Núm. 7598, copiado a la letra, dice:

"En la Corte del Distrito del Distrito Judicial de Humacao, P. R. —Estados Unidos de América, El Presidente de los Estados Unidos, SS: El Pueblo de Puerto Rico *versus* Ezequiel Forastieri.—El Pueblo de Puerto Rico al Alcaide de la Cárcel Municipal Caguas o *Ditto*. Humacao. Habiéndose con esta fecha dictado por mi una orden para que Ezequiel Forastieri sea detenido con objeto de que responda al cargo que se le hace de Inf. Art. 131 del C. P. (*felony*) porque un día del mes de abril de 1937, en Caguas, dentro del Distrito Judicial de Humacao, P. R., ilegal y maliciosamente, ofreció, prometió y dió una dádiva, dinero en metálico, a Manuel Quintero, testigo de cargo que como tal había de ser llamado a declarar en el caso El Pueblo v. Ezequiel Forastieri, pendiente por asesinato en la Corte de Distrito de Humacao, induciéndolo así a dar un falso testimonio, ocultando el verdadero, al ser llamado a declarar como tal testigo de cargo, por la presente se ordena a usted lo reciba bajo su custodia y lo detenga en tanto sea legalmente excarcelado. Fianza $5,000. Dado bajo mi firma hoy día 9 de junio de 1937. (Firmado) Miguel García González, Fiscal."

Los mandamientos en los recursos núms. 7599, 7600 y 7601 son iguales, excepto en cuanto a las personas a quienes se ofreció la dádiva, que lo fueron, respectivamente, Lorenzo Ramos, Joaquín Vázquez y Emilia Nieves.

El mismo día de la vista la corte de distrito declaró sin lugar las cuatro peticiones. Forastieri apeló para ante esta Corte Suprema. Presentó un alegato común a los cuatro recursos que fueron oídos el cinco de mayo actual con asistencia del apelante por su abogado y del fiscal que se opuso por escrito y oralmente. Serán considerados, pues, en una sola opinión y resueltos por sentencias separadas.

Sostiene el apelante que deben revocarse las sentencias recurridas porque la prueba del fiscal, legalmente considerada, no es bastante para demostrar la existencia de causa probable para su detención.

La evidencia practicada fué la misma en los cuatro casos, tomándose el soborno en relación con Quintero como demostrativo de la concurrencia de iguales circunstancias en relación con los de Ramos, Vázquez y Nieves.

El fiscal presentó la acusación formulada contra el apelante Forastieri imputándole la comisión de un delito de asesinato al dorso de la cual figuran como testigos de cargo Manuel Quintero, Lorenzo Ramos, Joaquín Vázquez y Emilia Nieves, la fianza de cinco mil dólares prestada en dicha causa a fin de que el acusado obtuviera su libertad provisional, la acusación formulada contra el propio Forastieri por infracción del artículo 131 del Código Penal en relación con Quintero, la declaración prestada por éste en junio 2, 1937, en la investigación que condujo a la formulación de la dicha acusación por infracción al artículo 131 del Código Penal, y su propio testimonio. Dijo que además de la declaración de Quintero tenía otras de testigos cuyos nombres figuran al dorso de la acusación. Mientras declaraba se obtuvo la información del secretario de la corte en el sentido de que no se había radicado acusación alguna contra Quintero.

El peticionario Forastieri declaró entonces. Dijo que se mantenía con el producto de su trabajo. Fué maestro de instrucción pública hasta 1932, dedicándose en la actualidad a administrar algunas economías de una hermana, unos dos mil dólares. Tiene un pedazo de terreno que compró por dos o tres mil dólares.

Presentó el fiscal un expediente sobre licencia para portar armas iniciado por Forastieri en la corte en 1935 por declaración jurada en la que dijo que se dedicaba a la administración de fincas y al negocio de préstamos, teniendo que andar a diario por Caguas y otros pueblos llevando a veces consigo grandes sumas de dinero. También una certificación de la

inscripción de una finca del peticionario valorada en tres mil dólares y la declaración de Juan Carrió, Gerente de la Sucursal de Caguas del Banco Popular, manifestando que el peticionario abrió su cuenta corriente con $1,095.31, teniendo en 10 de junio de 1937 un balance a su favor de $4,305.25.

En su declaración ante el fiscal, Manuel Quintero, dió testimonio de lo que sigue:

Declaró en la investigación de la causa sobre asesinato lo que sabía en verdad. Después lo llamó Forastieri ''para decirme que yo no sacaba nada con que él fuera a la cárcel porque ya el muerto estaba muerto y que con que él fuera a la cárcel el muerto no se iba a vivir, que si yo cambiaba mi declaración y daba otra, que no lo perjudicara tanto, que me daría una cantidad de dinero al yo dar la declaración y la otra después del juicio . . . . Me dijo que declarara que Natalio Díaz le atacó con un machete, que él huyó para atrás y cuando le volvió a atacar por segunda vez, que entonces él, Forastieri, sacó el revólver de un bolsillo del carro, que disparó un tiro y tuvo la mala suerte de herirlo, porque así era una defensa propia y así no había jurado que lo echara a la cárcel . . . . Yo le contesté que no podía hacerlo porque ya tenía una declaración jurada. Y Forastieri entonces me dijo que si ése sólo era el inconveniente. Yo le contesté que algunos más. Entonces él me dijo que él tenía a una persona de la corte de Humacao, que si nosotros cambiábamos las declaraciones . . . haría desaparecer las declaraciones del caso, que habían dado los cuatro testigos que a esa fecha habíamos declarado.''

Sigue refiriéndose a otra entrevista que tuvo con Forastieri en la que éste quemó un papel que el testigo creyó que contenía su anterior declaración y a otras en que tomaron parte Vázquez, Torres y Ramos. Termina al hablar de aquélla en que intervino Vázquez, diciendo: ''En ésa fué la ocasión que nos dió cuatro pesos para los dos,'' y la en que tomaron parte ''Felino Torres y Lorenzo Ramos,'' como sigue: ''Ahí les ofreció también a Felino y a Lorenzo una cantidad de

dinero antes del juicio y otra después porque cambiaran las declaraciones.''

La declaración concluye así:

''P.—¿No ha habido alguna otra entrevista? R.—El lunes de esta semana Forastieri me llamó a su casa para decirme que se había enterado que a los testigos los había citado la corte, el fiscal, me dijo él, para una nueva investigación. Yo le dije que sí, que era cierto, que estábamos citados todos para el martes. Entonces me dijo: 'Bueno, pues ya usted sabe lo que le he dicho, si lo llaman para nueva investigación es porque el fiscal no tiene las declaraciones juradas que ustedes habían dado, y ya ustedes soben cómo tienen que declarar.' P.—¿Y el día que usted fué citado por el fiscal? R—Declaré lo mismo que había declarado la primera vez, y lo mismo que hoy he declarado en cuanto a los hechos del caso de la muerte de Natalio. P.—¿Forastieri nunca llegó a hablarle de cantidad específica de dinero por cambiar la declaración? R.—No, señor, nunca me puso tarifa. P.—¿Después de declarar en fiscalía no habló con él? R.—No, señor.''

Siguiendo la abundante jurisprudencia sobre la materia, se dijo en *Ex parte Vega,* 46 D.P.R. 491, 492:

''Estamos muy de acuerdo con el fiscal de este tribunal en que al presentarse una petición por falta de causa probable, el ministerio público no tiene necesidad de establecer un caso completo para una convicción, sino solamente que hay una probabilidad, o una probabilidad razonable, de que el caso puede ser sometido al jurado para su veredicto.''

¿Demostró en este caso el fiscal de distrito la existencia de esa probabilidad?

El apelante insiste en que no. Se basa en que la única evidencia aportada consistió en la declaración de un cómplice y disponiendo el artículo 253 del Código de Enjuiciamiento Criminal (ed. de 1935), que no procede la convicción por declaración de un cómplice, a no ser que ésta sea confirmada por alguna otra prueba que por sí misma y sin la ayuda del testimonio del cómplice tienda a demostrar la relación del acusado con la comisión del delito, es evidente que no se com-

probó que hubiera prueba, ni principio de prueba que justificara su detención.

Si Quintero fuera en verdad cómplice de Forastieri, tendría éste razón. ¿Lo es? Resumiendo la jurisprudencia sobre la materia se dice en 8 Am. Jur., Bribery, sec. 34:

"Las cortes no están contestes respecto a si el dador y el tomador de un soborno son cómplices entre sí, bajo la regla que exige la corroboración del testimonio de un cómplice. Un grupo de ellas adopta el criterio de que no son cómplices por razón de que el dar un soborno y el recibirlo son delitos distintos por los cuales una persona ajena al acusado no podría ser procesada como principal o cómplice. Otro grupo, negándose a adoptar este criterio y razonando que una persona es cómplice de un delito con motivo de la parte que ha tomado en el mismo, llega a la conclusión de que la persona que da un sóborno es cómplice de la que lo acepta, y viceversa."

En Puerto Rico la ley separa las ofensas, describiéndolas y castigándolas como delitos distintos, como sigue:

"Artículo 131.—(137 Cal.)—*Soborno de Testigos.*—Toda persona que d.ere, ofreciere o prometiere a un testigo o persona que va a ser llamada como testigo, alguna dádiva, en la inteligencia de que con ello ha de influir en el testimonio de dicho testigo, o que intentare por cualquier otro medio inducir fraudulentamente a alguna persona a dar falso testimonio o a omitir el verdadero, será reo de *felony*.

"Artículo 132.—(138 Cal.)—*Aceptación de Soborno por Testigos.*—Toda persona que fuere o pudiere ser llamada a servir de testigo y recibiere u ofreciere recibir cualquier dádiva en la inteligencia de que ésta habrá de influir en su testimonio, o hacer que se ausente del juicio o procedimiento en el cual se requiere que testifique, será reo de *felony*."

Siendo ello así, la jurisprudencia que debe aplicarse a nuestro juicio es aquélla que sostiene la negativa.

En 73 A.L.R. 389 hay una nota completa sobre la materia. En ella, refiriéndose al estado de California, se dice:

"En *People* v. *Coffey* (1911) 161 Cal. 433, 39 L.R.A. (N. S.) 704, 119 Pac. 901, se resolvió que la persona que recibe un soborno es un cómplice del aceptante del mismo y viceversa, no obstante el

hecho de que según el estatuto el darlo y el aceptarlo son dos delitos distintos. Al resolver que el criterio contrario era erróneo, la corte dijo: 'El más común de estos errores puede ser expresado así: La ley declara que todas las personas complicadas en la comisión de un crimen, y que directamente cometieren el acto constitutivo del delito o aconsejaren o incitaren a su comisión, son principales o autores. Ellas son, desde luego, cómplices. Por tanto, un cómplice es aquella persona que puede ser procesada por el mismo delito imputado al acusado, y por tanto, si no puede imputársele el mismo delito, no es un cómplice. Aquí se sintetiza el razonamiento de casos como el de *State* v. *Durnam* (1898) 73 Minn. 150, 75 N. W. 1127, 11 Am. Crim. Rep. 179, y la falacia del razonamiento debe ser obvia. Uno es cómplice de un delito por la parte que ha tomado en el mismo y no porque pueda acusársele como coautor. Esta última es una circunstancia accidental, que depende del contexto y que en forma alguna afecta la verdadera piedra de toque, o sea, la parte que el cómplice ha tomado en el delito.' ''

Y después se agrega:

''Mas no obstante el hecho de que la Corte Suprema de California aparentemente sentó la regla contraria en el caso de Coffey (Cal.) supra, se ha resuelto en *People* v. *Powell* (1920) 50 Cal. App. 436, 195 Pac. 456, en el cual se interpretó el artículo 1111 del Código Penal, adoptado con posterioridad al caso de Coffey, supra, que define un cómplice como aquél 'que está sujeto a ser procesado por el mismo delito imputado al acusado en el caso en que se presta el testimonio del cómplice,' que el dador de un soborno no es por tal hecho un cómplice del tomador del mismo y viceversa. Tal decisión se sostiene a base de que el solicitar un soborno o el ofrecerlo es de por sí suficiente para constituir el delito de soborno, irrespectivamente de si el mismo se da o se recibe más tarde; y el hecho de que se dé o se acuerde dar el mismo, o se reciba o se acuerde recibirlo, no disminuye la responsabilidad criminal proveniente de la mera solicitud u oferta. Se arguye además que, toda vez que la otra parte no puede ser un auxiliar o instigador de la solicitud u oferta, ella no puede ser convicta de ese delito, y en su consecuencia no es un cómplice. En dicho caso la corte dijo: 'Conforme hemos visto, entre los otros delitos imputados al acusado está el de solicitar un soborno. Ese delito puede ser cometido sin cooperación alguna por parte del denunciante, y quedó terminado en el momento en que se solicitó el soborno. No era necesario, por ende, que la persona de quien se

solicitó el soborno se allanara a darlo, o que tuviera ningún acuerdo o entendido con la persona que lo solicitó. . . . Por tanto el denunciante no puede ser convicto como auxiliar o instigador del delito de solicitar un soborno, aunque indudablemente podría condenársele por coadyuvar o instigar a la comisión del delito de recibir un soborno.' Esta aseveración fué aprobada en los casos de *People* v. *Lips* (1922) 59 Cal. App. 381, 211 Pac. 22, y *People* v. *Anderson* (1926) 75 Cal. App. 365, 242 Pac. 906, en que se resolvió que el dador de un soborno no es un cómplice de la persona que lo recibe.

"En los últimos casos antes mencionados, las personas acusadas de soborno habían iniciado toda la transacción al solicitar el soborno antes del dador del mismo hacer oferta alguna, y parecía haber un elemento del delito de extorsión unido a la solicitud. En su consecuencia, pueden ser distinguidos del caso de Coffey, puesto que no puede decirse que han resuelto la cuestión que surge, como en aquel caso, cuando el cómplice, más bien que la persona acusada de recibirlo, inicia la transacción ofreciendo primeramente el soborno. Sin embargo, bajo la definición estatutaria de cómplice, el razonamiento de los casos anteriores, llevado a su conclusión lógica, conduciría posiblemente al mismo resultado en todos los casos de soborno."

El apelante sostiene en un alegato adicional que presentara que el cambio en la jurisprudencia en California se debió a la enmienda de la ley, enmienda que no se ha hecho en la de Puerto Rico, citando como autoridad la nota misma de A.L.R. que estamos siguiendo.

Acabamos de transcribir lo que dice el autor y estamos por consiguiente en condiciones de fijar su alcance. La enmienda lo que hizo fué en verdad definir por ley algo en armonía con lo que antes existía, pero que exigió la definición a virtud de una interpretación distinta, de suerte que en Puerto Rico donde la cuestión es nueva, estamos en condiciones de seguir el verdadero pensamiento legislativo sin necesidad de que el legislador se vea obligado a exponerlo expresamente.

La negativa está sostenida además por decisiones de otros estados. Consideramos suficiente referirnos a uno de ellos, Minnesota, tal como se cita en 73 A.L.R. 392, a saber:

"De igual modo, en el caso de *State* v. *Durnam* (1898) 73 Minn. 150, 75 N. W. 1127, 11 Am. Crim. Rep. 179, que parece haber sido

la fuente de donde se tomó el razonamiento utilizado en los casos más recientes de California, el tribunal dijo: 'Cada una de las dos personas que toma parte en la transacción puede ser culpable de un delito, y sin embargo, si los dos delitos son separados y distintos, una persona no es cómplice de la otra. Supongamos, por ejemplo, que A solicita un soborno de B, y que B lo entrega. A es culpable del delito de solicitar el soborno y B del delito de darlo. Pero los dos delitos son enteramente distintos y ninguna de esas personas podría ser procesada como principal o cómplice del delito cometido por la otra. Tal caso no estaría cubierto por un estatuto que prohibe que se castigue a base del testimonio no corroborado de un cómplice, aunque, desde luego, la delincuencia moral del uno, al ser llamado como testigo contra el otro, sería un hecho que militaria contra su credibilidad, y a ser tomado en consideración por el jurado,' a pesar de no existir definición estatutaria de un 'cómplice' en aquel estado, según la había en los casos más recientes de Califoria.''

No siendo, pues, Manuel Quintero un cómplice, su declaración es suficiente para demostrar que existió causa probable para la detención de Forastieri y por tanto que no cometió la corte sentenciadora el error que se le atribuye.

El otro fundamento del hábeas corpus—fianza excesiva— no se discute en el alegato. Conocemos la prueba. El peticionario no carece de bienes propios ni de relaciones. No demostró que en verdad no pudiese prestar la fianza fijada por el fiscal. Y como las acusaciones fueron ya radicadas y las causas están bajo la jurisdicción de la corte de distrito que rebajó las fianzas y que tiene discreción en cualquier momento para actuar sobre la materia de acuerdo con las circunstancias concurrentes, no es necesario que adoptemos medida alguna sobre el particular.

*Deben declararse sin lugar los recursos y confirmarse las sentencias apeladas.*

El Juez Asociado Señor Travieso no intervino.