[Crim. No. 826. Second Appellate District, Division Two.—October 20, 1922.]

## THE PEOPLE, Respondent, v. WALTER LIPS, Appellant.

[1] CRIMINAL LAW—BRIBERY—AGREEMENT—EVIDENCE.—In this prosecution in which the indictment charged that defendant, jointly with another deputy sheriff, did "willfully, unlawfully, corruptly, knowingly and feloniously ask, receive and agree to receive" of and from a certain man and his wife a certain bribe for the purpose of influencing their action officially as deputy sheriffs, the evidence was sufficient to justify the jury in determining that the two individuals named agreed to pay and that the two deputy sheriffs agreed to receive a bribe.

[2] ID.—EVIDENCE—ACCOMPLICE—CORROBORATION.—The said wife having in no way been concerned with the officers in either asking, receiving or agreeing to receive the bribe, she was not an accomplice with them, and her testimony did not require corroboration.

[3] ID.—SHERIFF AS EXECUTIVE OFFICER.—Of our three branches of government, the executive, the legislative, and the judicial, sheriffs and their deputies belong to the first class named.

[4] ID.—CORPUS DELICTI—ADMISSIONS.—The *corpus delicti* having been amply established by the testimony of other witnesses before the detective took the stand, the error, if any, in receiving the testimony of the detective as to a conversation between him and defendant was harmless.

[5] ID.—ARREST OF FUGITIVE—ABSENCE OF WARRANT—ERRONEOUS INSTRUCTION.—In a prosecution of a deputy sheriff for bribery in refraining from arresting a fugitive from justice for whom he did not hold a warrant of arrest, it is not error to refuse an instruction requested by the defendant which contains a clause based upon the erroneous assumption that an individual is not a fugitive from justice if he departs from a state after a judgment of conviction rendered against him there has become final.

[6] ID.—FUGITIVES FROM JUSTICE—WHO ARE.—In such prosecution it was necessary to show only that the person whom the defendant refrained from arresting was a fugitive, whether under indictment pending or after final judgment of conviction; and not only convicted persons who flee a state, but those who escape from prison while serving sentence under a judgment of conviction, are fugitives from justice within the meaning of the federal constitution.

[7] ID.—INFLUENCING CONDUCT OF OFFICERS—MATTERS WHICH MAY BE BROUGHT BEFORE THEM—VARIANCE.—Where the charge is that the bribe was to be paid to defendant and the other deputy sheriff "upon the agreement and understanding that the action of them, the said defendants, upon a matter then and there pending before them in their official capacity should be influenced thereby," that charge cannot be sustained under the clause of section 68 of the Penal Code to the effect that agreements to receive bribes may not be made by officers when the taking of the bribe is to influence them in matters which may be brought before them in their official character.

[8] ID.—ABSENCE OF WARRANT OF ARREST—PENDENCY OF MATTER BEFORE DEPUTY SHERIFF.—A peace officer from the other state hav-

---

6. Who is fugitive from justice within purview of interstate extradition laws, notes, 7 Ann. Cas. 1076; 13 Ann. Cas. 907; Ann. Cas. 1918D, 1011.

8. Jurisdiction or authority of officer to act in the matter as element of bribery, notes, 116 Am. St. Rep. 40; 14 Ann. Cas. 246; 15 L. R. A. (N. S.) 1173.

ing called upon the sheriff, defendants' superior, and stated to him that an indictment was pending in that state against a certain person and that the offender was in this state or would soon be within the state, and the defendants having been detailed for the purpose of locating and apprehending such offender, the apprehension of such offender was a matter "then pending" before said officers, notwithstanding a warrant of arrest had not been issued, and their agreement to receive a bribe from such offender constituted a crime under that part of section 68 of the Penal Code which denounces agreements by an officer to receive bribes "upon an agreement or understanding that his vote, opinion, or action upon any matter then pending" before him shall be influenced thereby.

APPEAL from a judgment of the Superior Court of Los Angeles County. Paul J. McCormick, Judge. Affirmed.

The facts are stated in the opinion of the court.

Paul W. Schenck and Richard Kittrelle for Appellant.

U. S. Webb, Attorney-General, Arthur Keetch and John W. Maltman, Deputies Attorney-General, and Lorrin Andrews for Respondent.

WORKS, J.—By indictment it was charged that defendant, jointly with one W. J. Anderson, did "willfully, unlawfully, corruptly, knowingly and feloniousy ask, receive, and agree to receive of and from J. M. Furay and Mrs. Dede Furay" a certain bribe for the purpose of influencing their action officially as deputy sheriffs. The charge was based upon the provisions of section 68 of the Penal Code. Defendant was tried separately and now appeals from a judgment of conviction rendered against him.

[1] Appellant's first contention for a reversal of the judgment is founded upon the palpable misstatement that "The bribery charge in the indictment is based merely upon an agreement between Mrs. Furay and Lips and Anderson and nowhere in the evidence is there any evidence that Mrs. Furay ever made any agreement with either Lips or Anderson." Our quotation of a part of the terms of the indictment, made above, will demonstrate how erroneous is counsel's conception of its effect. The agreement mentioned in the charge was said there to have been made between Furay and Mrs. Furay on the one side and Lips and An-

derson on the other, not merely between the latter two and Mrs. Furay. The point made by appellant upon his erroneous assumption as to the effect of the indictment is that the evidence fails to show that Mrs. Furay ever agreed to give or the officers to receive from her a bribe. This illusion, for counsel are as far afield in making the point as they are in placing an estimate upon the effect of the indictment, may be dispelled by a brief recital of salient points in the evidence. As to this question it is to be said, then, that Lips and Anderson, who were deputies of the sheriff of Los Angeles County, were assigned by their superior in the sheriff's office to the duty of locating and apprehending Furay, who was under indictment in the state of Texas for the commission of a crime in that jurisdiction. After some search the deputies found Furay at his home in Glendale. He at once attempted to escape, but was rounded up by a shot from the pistol of one of the deputies and relinquished the effort. He then had a conference with both Lips and Anderson in a room of his house. At its close Anderson came to Mrs. Dede Furay, who is the wife of Furay, and said that the latter wanted to see her. Anderson then returned with Mrs. Furay to the room where Lips and Furay were, when the latter asked Mrs. Furay, according to her testimony, how much money she could raise. She testified further: "I asked him what he meant, how much money he had to have and he said he had to have twenty thousand dollars. He said if he could raise that much money they would not put him in jail . . . " Mrs. Furay then told the three men how much money she had or could obtain and Furay said he could borrow enough, in addition, to make up the twenty thousand dollars. It was a day or two before Mrs. Furay's money could be gotten together, the officers having finally expressed a willingness to accept ten thousand dollars as a consideration for Furay's release. In the meanwhile Lips and Anderson aided Furay to keep out of sight, he and they going to Long Beach and registering at a hotel there under assumed names. On the day when the cash was to be paid over Lips plainly showed his desire to avoid observation. After observation seemed successfully to have been eluded Mrs. Furay produced the money which she had said she could obtain and the payment was made to Lips and Anderson, both Furay and Mrs.

Furay being present. Some weeks after the payment was made Lips reported to his superior officer that he and Anderson have been unable to locate Furay. Under all these circumstances it is puerile to assert that Furay and Mrs. Furay never agreed to pay or that Lips never agreed to receive a bribe. Whether the agreement was made was to be determined by the jury from all the acts of the parties (*People* v. *Powell,* 50 Cal. App. 436 [195 Pac. 456]). The evidence was ample upon the question and we do not see how the jury could have reached a different conclusion.

[2] In discussing the point of which we have just made disposition we have followed the terminology of the briefs, that point being one involving the question, Between whom was the agreement for a bribe made? In view of the next point, however, it is material to note that the charge was that Lips and Anderson had asked, received, and agreed to receive a bribe. The point to the consideration of which the foregoing statement is a preface is to the effect that, granting that Mrs. Furay was a party to the agreement made by Lips and Anderson, she was an accomplice with them and her testimony required corroboration. This could not be so, as Mrs. Furay was in no way concerned with the officers in either asking, receiving or agreeing to receive the bribe. She was on the opposite end of the transaction. This point was fully discussed in *People* v. *Powell, supra.*

[3] Section 68 of the Penal Code, under which the charge against appellant was made, relates to the asking, etc., of bribes by executive officers, and appellant contends that he as a deputy sheriff was not an executive officer. It is insisted that he was a ministerial officer. If it be conceded that he was the latter, it cannot therefore be said that he was not an executive officer. Of our three branches of government, the executive, the legislative, and the judicial, sheriffs and their deputies undoubtedly belong to the first named. (See *Haynes* v. *Commonwealth,* 104 Va. 854 [52 S. E. 358], and also *People* v. *Salsbury,* 134 Mich. 537 [96 N. W. 936].)

[4] It is contended by appellant that the trial court erred in permitting a certain detective to testify to a conversation between him and appellant. This testimony was objected to on the ground, among others, that the *corpus delicti* in a criminal case cannot be established by the state-

ments or declarations of a defendant. If it be granted that the court erred in permitting this evidence to go to the jury, a point, however, which we do not examine, it is enough to say that the *corpus delicti* in the present case was amply established by the testimony of other witnesses before the detective took the stand. If there was any error in receiving the testimony of the detective it was therefore harmless.

[5] Another contention of appellant is that the trial court erred in refusing to give to the jury the following instruction, a portion of which we italicize: "I instruct you that proof that an indictment had been returned on a given date against a person in a sister state, and that a warrant of arrest had been issued thereon on a given date, is not proof that the matter was pending on any given date. The prosecution has alleged that on or about the sixth day of December, 1920, there was pending in the state of Texas an indictment against J. M. Furay. To prove this it is necessary for the prosecution to show not only that an indictment had been returned against him, but, in addition thereto, prove to you beyond a reasonable doubt that he had not been tried thereon, *or, if he had been tried, that the time of appeal therefrom had not elapsed.* If you have a reasonable doubt, from all the evidence, or lack thereof, whether or not an indictment was pending against J. M. Furay in the state of Texas on or about the sixth day of December, 1920, you must acquit the defendant." This instruction was requested for the reason that the district attorney offered in evidence only the indictment found in Texas, making no showing as to what disposition had been made of it. Waiving other questions which are worthy of consideration as bearing upon the court's refusal to give the instruction, it is enough to say that a part of it contained a statement of law which is incorrect and which must have misled the jury if it had been given. We refer to the portion which we have italicized, the clause being based upon the erroneous assumption that an individual is not a fugitive from justice if he departs from a state after a judgment of conviction rendered against him there has become final. [6] It was necessary for the prosecution to show only that he was a fugitive, whether under indictment pending or after final judgment of conviction. It is thoroughly

settled that not only convicted persons who flee a state, but
those who escape from prison while serving sentence under a
judgment of conviction, are fugitives from justice within
the meaning of the federal constitution (25 C. J. 259;
*Hughes* v. *Pflanz,* 138 Fed. 980 [71 C. C. A. 234]).   The
injection of this false element into the requested instruction
was a sufficient justification of the refusal to give it, for
the supreme court has said: "When it is urged here that
the court below erred in rejecting an instruction requested,
we are justified in reversing the judgment only when it
appears that it was the duty of the court to give the instruc-
tion exactly as requested.   It has been repeatedly held that
if any part of a single instruction ought not to have been
given, the action of the trial court in rejecting the whole
will be affirmed" (*People* v. *Davis,* 64 Cal. 440 [1 Pac.
889]).

The next point to be considered arises upon several in-
structions which were requested by appellant and which
were refused by the trial court.   These offered instructions
presented the view of appellant that the evidence in the
case failed to show that he was guilty of the charge made
against him for the reason that there was no legal duty
resting upon him to take Furay into custody.   This point
was made by these proposed instructions in the trial court,
and it is made here, because of the fact that no warrant had
been issued in this state for the apprehension or detention
of Furay.   The question raised by appellant, to use his own
words, is that "in the absence of a legal duty there can be
no bribery."   While the matter of the extradition of fugi-
tives from justice, as between the states, is basically regu-
lated by the federal constitution, many of the states have
passed laws outlining the procedure to be followed within
their borders in bringing about an extradition.   Particularly,
they have enacted measures providing for the apprehension
and detention of alleged fugitives from justice pending an
investigation by the executive department of the state and a
determination whether extradition shall follow.   Our legis-
lature has passed enactments covering these matters and they
are to be found in sections 1548–1556 of the Penal Code.
Under these sections a magistrate is empowered to issue a
warrant for the apprehension of a fugitive until the gov-
ernor shall determine whether his warrant shall issue as a

preliminary to the delivery of the fugitive to the authorities of another state. In the present instance no magistrate was asked to issue a warrant for the apprehension and detention of Furay and none was issued. Lips and Anderson were detailed for the purpose of locating and apprehending Furay after a peace officer from Texas had called upon the sheriff here, Lips' and Anderson's superior, and had stated to him that an indictment was pending against Furay in Texas and that the offender was in California or would soon be within the state. It was only upon this authority, if such it may be called, that Lips and Anderson acted in their connection with the Furay affair. If we grant for the sake of argument that this "authority" did not empower the officers to take Furay into custody, we are brought to the question made by appellant: Was he guilty of agreeing to receive a bribe from Furay and his wife?

As we have already said, the prosecution of appellant was based upon section 68 of the Penal Code. It is contended by the attorney-general that under this enactment it was not necessary, in order to render appellant guilty of the charge made against him, that at the time his agreement with the Furays was consummated he should have been clothed with a then present authority to take the husband into custody. Not only does section 68 denounce agreements by an officer to receive bribes "upon any agreement or understanding that his vote, opinion, or action upon any matter then pending" before him shall be influenced thereby, but the language which we have quoted is immediately followed by the clause, "*or which may be brought before him* in his official capacity," the italics being ours. The attorney-general says that if appellant had no authority to apprehend Furay because of the lack of a warrant from a California magistrate, that lack might have been supplied at any moment. It is argued that if such a warrant were at any time issued and were at any time placed in appellant's hands as a deputy sheriff, the matter would then be "brought before him" in his official capacity, for it would then be his duty to take Furay into custody, and it is said that appellant's agreement to receive a bribe was therefore within the terms of section 68. Whatever may be said as to the correctness of these views in the abstract, they have no application to the actual conditions in the present case. The indictment

here did not charge appellant with having agreed to receive a bribe for the purpose of influencing his action in a matter which might be brought before him. [7] The charge, and it was made against Lips and Anderson together, as we have already remarked, was that the bribe was to be paid to them ''upon the agreement and understanding that the action of them, the said defendants, upon a matter then and there pending before them in their official capacity should be influenced thereby. . . . '' We are of the opinion that this charge cannot be sustained under the clause of section 68 to the effect that agreements to receive bribes may not be made by officers when the taking of the bribe is to influence them in matters *which may be brought before them* in their official capacity, as a matter of that character does not come within the terms of the indictment. (See 22 Cyc. 455, 456; *People* v. *Redman,* 39 Cal. App. 566 [179 Pac. 725].)

[8] There is, however, another view of the attorney-general upon which we think the trial judge's rejection of the proposed instructions now under consideration may be sustained. That view is based upon a part of section 68 of the Penal Code which we have already mentioned—that part which refers to agreements to receive bribes as to matters ''then pending'' before officers, as distinguished from the clause which was the principal subject of our paragraph last set forth, that is, the clause as to matters which may be ''brought before'' officers. We think the present case falls within the clause as to matters ''then pending,'' under the decisions of courts of other states which have taken a broad view of the subject. These authorities are substantially to the effect stated in a standard law publication as follows: ''The giving or receiving of money . . . for the purpose of influencing official conduct is not deprived of its criminal character by the fact that the action contemplated is not within the officer's jurisdiction. If he acts in his official capacity—and by this term is meant the doing of such acts as properly belong to the office and are intended by the officer to be official—the offense is complete'' (4 R. C. L., p. 183, par. 13). It is true that this statement, as well as other more specific ones which follow it in the publication mentioned, is principally supported by the citation of cases which relate to the taking of bribes upon a promise to perform some affirmative act believed to

be within the line of official duty, as the promise of a legislator to vote for a measure which turns out to be unconstitutional, or void for some other reason, or as the promise of a judge to exercise a jurisdiction which he does not possess. It is true also, however, that there are cases within the broad lines of the quoted statement which are closely akin to the present one. Among these is *Moseley* v. *State,* 25 Tex. App. 515 [8 S. W. 652]. In that case the accused, a constable, had arrested an individual without a warrant and had allowed him to escape in consideration of a payment of cash. The court said, in disposing of the case: "It is insisted by counsel for defendant that the arrest and custody of John Gable by the defendant was without authority of law, and that, therefore, it was no offense for the defendant to accept a bribe to release him. We do not so understand the law. It was by virtue of his official authority that the defendant arrested and held John Gable. It matters not whether the arrest and custody were legal or illegal; the said Gable was a prisoner in the custody of the defendant, a peace officer, and was permitted by the defendant to escape, in consideration of money paid him to effect such escape. We are of the opinion that, in a prosecution for this offense, it is not permissible for the defendant to question the legality of his custody of the prisoner. Such an issue is irrelevant and immaterial. The moral obliquity of this offense is the same where the custody of the prisoner is illegal as where it is legal, and the injury to public justice is the same." Although the Texas statute concerning bribery is different from ours, the appositeness of the above language as applied to the present case appears to us to be striking, especially in view of what the supreme court has said in *People* v. *Markham,* 64 Cal. 157 [49 Am. Rep. 700, 30 Pac. 622]. That case related, it is true, to the part of section 68 of the Penal Code dealing with agreements to accept bribes to influence matters which might be "brought before" an officer, but the language employed by the court in quoting from the opinion of a court of another state nevertheless has a general application to the present situation. A part of the quotation is, italics being ours: "The legislature, I think, did not intend that the prosecution should depend upon the fact whether the officer actually had it in his power to carry out the corrupt agreement before

the indictment was exhibited. It is sufficient, I think, that the subject matter upon which the bribe was to operate existed, and could legally be brought before the officer in his official capacity. *The offense consists,* in contemplation of the statute, *in poisoning and corrupting the fountain of justice,* and although the particular deleterious consequence designed to be effected by the parties has not ensued, *the state,* nevertheless, *has an officer corrupted,* and society has lost all protection for its rights, so far as the administration of the law by him is concerned.'' So it is here. Appellant had been instructed by his superior to locate and apprehend Furay, and without doubt he believed that he was acting officially as a deputy sheriff in all that pertained to his activities under the directions of that superior. His action in agreeing to release Furay was corrupt in the last degree, and we find no difficulty under the law in determining that his illicit conduct related to a matter ''pending before him'' in his official capacity. In penning this paragraph and those which immediately precede it we have not failed to consider *People* v. *Schmitz,* 7 Cal. App. 330, 369, 373 [15 L. R. A. (N. S.) 717, 94 Pac. 407, 419]. In our opinion that case is readily distinguishable from the present one.

Appellant states various points relating to rulings upon the admissibility of evidence and to rulings giving or refusing instructions. These points are not supported by argument or by the citation of authority. It seems a waste of time to remind appellant and again to remind the bar that points so made will not be considered.

Judgment affirmed.

Finlayson, P. J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on December 18, 1922.

All the Justices present concurred.