[Crim. No. 2456.   Fourth Dist., Div. One.   Nov. 3, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. CECIL LARRY WATTERS, Defendant and Appellant.

Carl L. Fabbroni for Defendant and Appellant.

Thomas C. Lynch, Attorney General, William E. James, Assistant Attorney General, and Ronald M. George, Deputy Attorney General, for Plaintiff and Respondent.

COUGHLIN, J.—By indictment, the defendant Watters and a codefendant named La Vergne were charged with the offenses of murder, robbery and assault by means of force likely to produce great bodily injury; all involved the same victim; and all occurring on January 7, 1965. The codefend-

ant La Vergne was tried separately; was found guilty of all offenses; and, pursuant to the verdict on the penalty phase of the murder charge, was sentenced to death. His conviction and the judgment imposing sentences, including that of death, were affirmed on appeal. (*People* v. *La Vergne*, 64 Cal.2d 265 [49 Cal.Rptr. 557, 411 P.2d 309].) The defendant Watters had left the State of California immediately following the events charged as offenses; went to Rochester, New York; was arrested at the latter place; at a hearing before the court in that state waived extradition; and was returned to California for trial. Subsequently, by an amended indictment, defendant was charged with murder, kidnaping for the purpose of robbery, and robbery; was found guilty of murder in the first degree, kidnaping with intent to rob and with infliction of bodily harm upon the victim, and robbery in the first degree; on the penalty phase, the jury fixed the punishment on the murder count as imprisonment for life and on the kidnaping count as imprisonment for life without possibility of parole. Judgment was pronounced, and defendant appealed.

Pertinent facts applicable to the case at bench are summarized in the opinion of *People* v. *La Vergne, supra,* 64 Cal.2d 265, 267, as follows: "At approximately 5 a.m. on January 7, 1965 Peter Giacalone, a Los Angeles cab driver, was beaten and strangled to death by two men in an alley in Imperial Beach. In the vicinity of his cab, which was parked near the alley, were found a cigarette lighter, a pair of sunglasses, later identified as belonging to Watters, a hat later identified as belonging to defendant, and some loose $1.00 and $5.00 bills. The trip sheet in the cab showed $14.50 in fares since the commencement of Giacalone's shift, but no money was found on his body and the wallet was not located. Quantities of blood were on the cab and the ground near it."

The cause of the victim's death was manual strangulation. About his neck, when found by the officers, was Watters' belt. Trousers worn by Watters on the night of the murder bore bloodstains.

Preceding the murder Watters and La Vergne got into the victim's cab in Los Angeles; caused the victim to get into the back seat, where he remained with Watters while La Vergne drove the cab to San Diego; made two stops on the way from Los Angeles to San Diego; and drove through San Diego to Imperial Beach where the murder occurred.

At about 6:30 a.m. on the same morning Watters obtained a ride in an automobile from a man on his way to work who

noted that as Watters got into the front seat of the automobile a blue steel revolver fell onto the floor board. Watters picked up the revolver; shoved it into the waistband of his pants; and pulled his sweater over it. Watters got out of the automobile at National City; boarded a bus that took him to Los Angeles; and two days later left Los Angeles, eventually going to Rochester, New York.

As grounds for reversal defendant contends (1) the evidence is not sufficient to support the finding of murder in the first degree; and, (2) the court erred in its instructions to the jury, admitting into evidence photographs of the deceased and permitting the introduction of statements made by him to the officers while he was in custody in Rochester.

■ The attack upon the sufficiency of the evidence to support a finding of murder in the first degree is premised upon the contention there is no showing the victim was robbed, or that defendant participated in any robbery, and for this reason the case does not come within the felony-murder rule stated in Penal Code, section 189. Parenthetically it is contended the evidence does not show the killing was premeditated. The sufficiency of the evidence to support the charge of first degree murder was not considered in the companion case of *People* v. *La Vergne, supra,* 64 Cal.2d 265. However, the judgment in that case was affirmed on facts established by evidence similar to that in the case at bench. The victim collected $14.50 in fares before Watters and La Vergne entered his cab; only $6 and a few cents of this amount was found at the scene of the murder; and it may be inferred the balance thereof was taken from him forcibly by La Vergne or Watters. It is of no consequence that, as argued by Watters, the evidence does not show he actually took any money from the person of the victim, or that any such money was in his possession. Even assuming La Vergne was the robber who took the missing money, there is adequate evidence establishing that Watters was a participant in the offense as an aider and abettor which, under the rule prescribed by section 31 of the Penal Code, makes him a principal in the crime.

■ In the main, Watters' defense was predicated upon his contention he did not actually take any money from the victim; did not actually beat, strangle or harm the victim; and his conduct in the premises was the product of fear of injury by La Vergne. In this manner he seeks to excuse or justify giving his belt to La Vergne, which the latter placed about the neck of the victim. However, the evidence justifies the infer-

ence that when the cab stopped on the way from Los Angeles to San Diego and again at the time the murder took place, Watters, if he had chosen to do so, could have left La Vergne to his own devices. His failure to withdraw directly supports the conclusion he actively participated. In addition, the fact that he carried a gun, which was discovered when it fell on the floor of the automobile in which he sought a ride, and the fact his trousers were bloodstained, also are evidence of active participation.

The contention that the evidence is insufficient to support the charge of murder in the first degree is without merit.

The claims that the court erred in admitting in evidence certain photographs of the victim, in refusing to give requested instructions and in giving an instruction that "a homicide resulting from strangulation indicates malice" involved the same claims of error rejected by the court in *People* v. *La Vergne, supra,* 64 Cal.2d 265, 270-272.

The court, over objection, admitted into evidence incriminating statements made by Watters to the police officers while in custody after his arrest in Rochester, New York. He contends admission of these statements should have been excluded under the rules stated and applied in *Miranda* v. *Arizona,* 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], *Escobedo* v. *Illinois,* 378 U.S. 478 [12 L.Ed.2d 977, 84 S.Ct. 1758], and *People* v. *Dorado,* 62 Cal.2d 338 [42 Cal.Rptr. 169, 398 P.2d 361].

Following his arrest extradition proceedings were instituted before a court in Rochester, New York; an attorney was appointed by that court to represent him; and, following consultation with that attorney, defendant appeared in court and waived any objection to his extradition. Thereafter, he was interviewed by police officers from California who identified themselves; told him he was charged with murder; and advised him that he was entitled to counsel, did not have to say anything to them, and in the event he did so his statements could be used against him in a criminal court. The defendant replied "that he had been to court, that he had already talked to an attorney, that he was aware of his rights and he knew them." One of the officers presented him with a printed form with the request that he read it, fill in the blanks and sign the same. The defendant did so, inserting in appropriate blanks his name, the date and place of his birth, and the time of signing, i.e., 9:30 a.m., and after signing delivered it to the officer. In this writing the defendant acknowledged that

before being questioned, before making any statements, either oral or written, and before being asked to do so, he was informed by the officer that he was suspected of murder and was advised he had the right to be represented by an attorney, did not have to make any statement, and that any statement made by him might be used as evidence against him.

It is not contended defendant was not advised of his rights to counsel and to remain silent, or was denied permission to get in touch with or talk to his attorney. He claims this advice was not given him until after he had made the incriminating statements. The evidence upon this issue was conflicting. Under settled rules on appeal it must be concluded that the trier of fact found he was advised of his rights before rather than after making the statements.

As the evidence supports the conclusion defendant not only was advised of his right to counsel but had an attorney who had been appointed to represent him, and not only was advised of his right to remain silent and that anything he might say could be used against him in a criminal court but told the officer he had talked to his attorney and was aware of his rights, the foundational requisites to admission of the statements he then made to the officer, prescribed by the *Escobedo* and *Dorado* decisions, were established. (*People* v. *Jones,* 244 Cal.App.2d 378 [52 Cal.Rptr. 924] ; *People* v. *Webb,* 243 Cal.App.2d 179, 184-185 [52 Cal.Rptr. 85] ; *People* v. *Stafford,* 240 Cal.App.2d 422, 426 [49 Cal.Rptr. 598].)

Defendant's contentions before this court respecting the admissibility of the statements made by him while in custody in Rochester are not clearly defined. In one part of his brief he asserts that "at no time" did the police advise him that he had a right to remain silent. This contention is contrary to all of the evidence. In another part of his brief it would appear he contends he had not been advised of his right to remain silent and to have counsel before he had been interrogated. As noted, although there is a conflict in the proof on this issue, there is substantial evidence supporting the conclusion the advice had been given to him before he was questioned. In a third part of his brief he seems to contend the questioning was improper because the officer knew he had an attorney and proceeded to question him in the absence of that attorney. The exclusionary rule prescribed by the *Escobedo* and *Dorado* decisions does not extend to incriminating statements of a defendant merely because they were made without the presence of his attorney.

160

We need not determine whether the prerequisites prescribed by the *Miranda* decision also were complied with because the trial of the case was concluded on December 12, 1965, which preceded that decision on June 13, 1966. (*Johnson* v. *New Jersey*, 384 U.S. 719, 734 [16 L.Ed.2d 882, 893, 86 S.Ct. 1772, 1781]; *People* v. *Jones, supra*, 244 Cal.App.2d 378, 382.)

The judgment is affirmed.

Brown, P. J., and Whelan, J., concurred.