[Crim. No. 24383. Second Dist., Div. Two. Apr. 24, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
DONNA Y. GORDON, Defendant and Appellant.

## COUNSEL

Paul M. Posner for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Norman H. Sokolow and Roy C. Preminger, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**COMPTON, J.**—Defendant was indicted by the Grand Jury of Los Angeles County for one count of violation of Penal Code section 653f (solicitation of a bribe). Prior to trial defendant moved under Penal Code section 995 to set aside the indictment. That motion was denied and in the jury trial which followed defendant was found guilty as charged. She appeals the judgment of conviction and among other things contends that her motion under section 995 should have been granted.

The indictment alleged that on or about the 3d of January 1973, the defendant did "willfully and unlawfully and feloneously solicit another to offer, accept and join in the offer acceptance of a bribe." According to the evidence the person alleged to have been solicited was Officer Joseph Stanley of the Los Angeles Police Department who was at the time in question assigned to the narcotic detail.

### FACTS

Defendant was an attorney at law and shared office space with another practitioner Mr. Bane. Mr. Bane had formerly been a member of the staff of the City Attorney of the City of Los Angeles. During that tenure he had become acquainted with Officer Stanley.

At some point late in the year 1972, defendant contacted Mr. Bane and stated that she knew where there was a two- or three-pound quantity of cocaine to be seized. She inquired whether Mr. Bane believed Officer Stanley would be interested and whether he could be trusted. Mr. Bane replied in the affirmative. Defendant asked Mr. Bane to contact Officer Stanley.

Mr. Bane mentioned the matter to Officer Stanley and the officer expressed an interest in seizing the cocaine. Mr. Bane advised the defendant of Officer Stanley's interest.

In late December of 1972, the defendant called Officer Stanley at the Administrative Narcotics Division of the Los Angeles Police Department and inquired if he had discussed with Mr. Bane the two or three pounds of cocaine and whether he was interested in seizing the cocaine and making an arrest. Officer Stanley stated that he was and arrangements were made for the defendant and Officer Stanley to meet. Defendant gave the officer her business and home telephone numbers.

On January 3, Officer Stanley called defendant at her office and a meeting was arranged at the building of the Los Angeles Community College Board of Trustees. That same afternoon Officer Stanley went to the agreed location. He saw the defendant sitting in the gallery observing a meeting of the board. Defendant nodded to Officer Stanley and the two went to a coffee shop located in the building.

In the conversation that followed defendant told the officer that she had a client who "wanted someone taken care of." The officer asked her if she meant "killed" and she replied "no" that she meant "discredited." She identified the person whom her client wanted discredited as Monroe Richman, a member of the Los Angeles Community College Board of Trustees. She stated that her client was highly politically oriented and that he, the client, had inquired of her if it could be arranged to have Mr. Richman "planted" with a quantity of narcotics and then arrested. Defendant also stated in that conversation that "she wouldn't even consider a situation like this unless it was worth money for everybody concerned." Defendant suggested that narcotics be planted either on Mr. Richman's person or in his car. Defendant offered to provide Officer Stanley with information upon which to effect the arrest of a person in possession of two or three pounds of cocaine and then asked if it would be possible to take a portion of that seized cocaine and plant it on Mr. Richman. Officer Stanley replied that it was possible. Defendant

indicated that "it might be worth around $10,000." There were subsequent conversations between the two concerning the acquisition of the cocaine. On January 10, 1973, Officer Stanley called the defendant at her home and surreptitiously recorded the conversation which in part went as follows:

"STANLEY: I wanna talk about the original 2 to 3 pounds.

GORDON: Um-hum.

STANLEY: All right. We gotta have that for our supply.

GORDON: I don't know if I'm gonna be able to get that.

STANLEY: You don't think—you don't think you're gonna be able to get that?

"GORDON: I'm not sure about that. Assuming I can't get that, can we still do this other thing?

STANLEY: Well, assuming you can't get the 2-3 pounds of coke, I don't know how we can come up with any other cocaine.

GORDON: Maybe the price will just raise a little bit on the whole deal.

STANLEY: Well, can your man bear the traffic?

GORDON: I don't know what the traffic is.

STANLEY: Well, I don't either. What do you think?

GORDON: Well, *I'm thinking in terms of 10 grand.*

STANLEY: For the whole—For the whole thing 10 grand?

GORDON: Um-hum. That too little?

STANLEY: Well, then what do you and I do with it?

GORDON: *I don't care. I'll take a third, you can take three-quarters. You can take—give me a quarter. I don't care. Whatever you think is fair.*

STANLEY: All right.

GORDON: Uh—You know I'm not out to—to take 50. I'm not out to take very much at all. It depends.

STANLEY: Okey, well—

GORDON: I'd like—I'd like—uh—you know—a couple—$2500.

STANLEY: All right. But I—

GORDON: I didn't—matter of fact I would like to—if you think that's not enough we may have to go out and make a purchase and let's up it.

STANLEY: Well, I don't know. You're right. We may have to make a purchase." (Italics added.)

The following day the officer called defendant at her office. In that conversation defendant told the officer that she had decided not to be a party to this scheme, that she felt she had a political career ahead of her and she did not want to take a chance on ruining that career. Subsequently the officer made several more contacts with the defendant in an effort to get her to introduce him to her client who originally proposed the scheme. Such meeting, however, was never consummated.

## CONTENTIONS ON APPEAL

■ Defendant contends that there was insufficient evidence to sustain the conviction because there was no evidence that on January 3 she actually solicited the officer to accept the bribe, the argument being that she was "merely feeling out" the officer.

■ Solicitation consists of the asking of another to commit one of the specified crimes with intent that the crime be committed. The intent may be inferred from the circumstances of the asking. (*People* v. *Shapiro,* 170 Cal.App.2d 468 [338 P.2d 963].)

■ "The solicitation of a bribe need not be stated in any particular language; such a solicitation may be in the form of words which carry the import of a bribe and were evidently intended to be so understood." (*People* v. *King,* 218 Cal.App.2d 602, at p. 610 [32 Cal.Rptr. 479].)

The jury by its verdict found the defendant did in fact, and with the requisite intent, ask the officer to accept a bribe. ■ On appeal from the judgment of conviction we view the evidence in the ·light most favorable to supporting the jury's determination and indulge in all reasonable inferences—which the evidence will support.˙ (*People* v. *Reilly,* 3 Cal.3d 421, at p. 425 [90 Cal.Rptr. 417, 475 P.2d 649]; *People* v. *Redmond,* 71 Cal.2d 745, 755 [79 Cal.Rptr. 529, 457 P.2d 321].)

■ Officer Stanley testified to statements by the defendant from which it could be reasonably inferred that the defendant was asking the officer, in return for the lion's share of $10,000 to arrange to falsely arrest Monroe Richman for possession of narcotics. The jury's verdict is well supported by substantial evidence. The jury could consider defendant's statements subsequent to January 3, in determining her intent on that earlier date. In fact, since the indictment alleged that the crime was committed "on or about January 3," the jury could have based its verdict on the aggregate of the conversations between defendant and Officer Stanley.

■ Defendant next contends that even if the words used by defendant amounted to a solicitation the officer was not solicited to act in his "official capacity."

Penal Code section 7, subdivision 6, states: "The word 'bribe' signifies anything of value or advantage, present or prospective, or any promise or undertaking to give any, asked, given, or accepted, with a corrupt intent to influence, unlawfully, the person to whom it is given, in his action, vote, or opinion, in any public or official capacity; . . ."

It is ludicrous to suggest that the solicitation by the defendant was not intended to affect Officer Stanley's action in his official capacity as a police officer for the City of Los Angeles. While it is true that it is not the official duty of a police officer to "frame" innocent persons by planting narcotics on them, it is generally within a police officer's official duties to make arrests. The solicitation here was for the officer to wrongfully and corruptly use his power of arrest in return for money.

The defendant sought out Officer Stanley because he was in fact a police officer and presented the matter for decision by him in his official capacity. (*People* v. *Finkelstin,* 98 Cal.App.2d 545 [220 P.2d 934].)

In any event " 'The giving or receiving of money . . . for the purpose of influencing official conduct is not deprived of its criminal character by the fact that the action contemplated is not within the officer's jurisdiction.' " (*People* v. *Lips,* 59 Cal.App. 381, at p. 389 [211 P. 22]; *People* v. *Megladdery,* 40 Cal.App.2d 748 [106 P.2d 84].)

■ Defendant next contends that the officer's testimony was not sufficient to prove a violation of section 653f of the Penal Code because of that statute's requirement that the offense be proved by the testimony of two witnesses, or one witness and corroborating circumstances.

The testimony of Mr. Bane coupled with the tape-recording of the conversation of January 10 and other conversations which we need not set out in detail, constituted adequate corroboration of Officer Stanley's testimony.

These later conversations, though they show to defendant's credit, that she gradually and finally lost her ardor for participating in such a nefarious and despicable venture, leave no doubt that as of January 3, 1973, and continuing to at least January 10, 1973, she was intentionally trying to enlist Officer Stanley's assistance in the scheme.

Since the crime was fully committed on January 3, it is no defense that the defendant later withdrew or failed to consummate the crime which was the object of the solicitation. ■ The offense of solicitation "is complete when the solicitation is made, and it is immaterial that the object of the solicitation is never consummated, or that no steps are taken toward its consummation." (*People* v. *Burt,* 45 Cal.2d 311, at p. 314 [288 P.2d 503, 51 A.L.R.2d 948].)

■ Penal Code section 653f is not as defendant contends, an unconstitutional infringement by the Legislature on freedom of speech. It is, instead, a valid exercise of the police power in preventing the harm which would result if the inducement proved successful and in protecting inhabitants of this state from being exposed to inducements to commit or join in the commission of crime. (*People* v. *Burt, supra; Benson* v. *Superior Court,* 57 Cal.2d 240 [18 Cal.Rptr. 516, 368 P.2d 116].)

■ Defendant contends that the trial court erred in refusing to quash the indictment pursuant to Penal Code section 995. She argues that the indictment was obtained through violation of her privilege against self-incrimination as a result of the deputy district attorney's "calling"

her as a witness before the grand jury and by his failing to properly advise the grand jury on certain principles of law.

Contrary to defendant's contention she was not "called" by the deputy district attorney as a witness before the grand jury. The record discloses that defendant appeared before the grand jury in response to a letter signed by the foreman of that body. The letter was simply an invitation for her to appear if she so desired. When defendant voluntarily appeared she stated that she was a lawyer and fully understood her rights in the premises and that she was well aware that she could refuse to answer any questions she believed would tend to incriminate her.

Defendant was represented by counsel and she was told that she could confer with counsel after being asked, and before answering, any questions. She volunteered to be sworn as a witness and while on the witness stand refused to answer questions by invoking her privilege against self-incrimination on approximately 20 occasions. It is clear that defendant was not compelled either to appear or testify before the grand jury.

The major thrust of defendant's contention that the indictment should have been quashed is that because the deputy district attorney did not instruct the grand jury to draw no adverse inference from the defendant's assertion of the privilege against self-incrimination, the grand jury could have drawn such an inference. She also contends that the deputy district attorney (1) failed to specifically instruct the grand jury that the crime of solicitation requires that the solicitee be asked to do some act in his public or official capacity and (2) that he failed to adequately explain to the grand jury the intent that is required for a conviction of the crime of solicitation.

Penal Code section 995 provides only two grounds upon which an indictment may be set aside. They are: "1. Where it is not found, endorsed, and presented as prescribed in this code. 2. That the defendant has been indicted without reasonable or probable cause."

Officer Stanley and Mr. Bane both testified before the grand jury to the same effect as set out earlier in our recitation of the trial evidence. Hence there was abundant evidence to satisfy the reasonable or probable cause requirement for a valid indictment.

Defendant's attack on the indictment, if it be successful, must fall within subdivision 1 of Penal Code section 995 which "has been

interpreted as applying only to those sections in part 2, title 5, chapter 1, of the Penal Code beginning with section 940." (*People* v. *Jefferson*, 47 Cal.2d 438, at p. 442 [303 P.2d 1024].) Those sections deal generally with the rules of pleading, the form of the indictment and the number of grand jurors required to return an indictment. They contain no requirement that the deputy district attorney instruct the grand jury on the law in the same manner that a trial judge instructs a petit jury.

In *People* v. *Jefferson, supra,* the validity of an indictment was upheld even though the foreman had failed to comply with Penal Code section 907 (now Pen. Code, § 939.5) directing that he ask members of the jury who could not act impartially to retire.

■ Penal Code section 935 permits, and Government Code section 26501 requires, the district attorney to attend and advise the grand jury but those statutes do not require the jury to request or accept that advice. The grand jury may act without reference to advice by the district attorney. (*People* v. *Coleman,* 83 Cal.App.2d 812 [189 P.2d 845].) The grand jury is also entitled to ask and receive advice from the superior court but it is not required to do so. (Pen. Code, § 934.)

■ An indictment cannot be attacked either under Penal Code section 995 or following a denial of such motion on appeal from a judgment of conviction on the grounds that the grand jury was given insufficient or even inaccurate legal advice before returning an indictment.

The legal sufficiency of the evidence which underpins an indictment is reviewed by a judge of the superior court at the time of the hearing on a motion under section 995 of the Penal Code. It is this check on the grand jury's power to indict that serves to protect a defendant against unmeritorious or legally incorrect indictments.

■ Defendant was not entrapped. The evidence points unerringly to the fact that it was defendant who sought out Officer Stanley and initiated the critical conversation. All that Officer Stanley did, in response to a request of the defendant, was to meet her at a designated location and listen to her proposal. He asked questions which were appropriate to the conversation in an effort to illicit in more detail the nature of the proposal. He subsequently did no more than afford defendant an opportunity to further elaborate on and develop her original proposal.

■ Entrapment occurs only when the intent to commit the crime is conceived in the mind of the police agent who lures one not previously so disposed into the commission of a crime. (*People v. Cain,* 15 Cal.App.3d 687, at p. 696 [93 Cal.Rptr. 388]; *People v. Benford,* 53 Cal.2d 1 [345 P.2d 928].) Where a police officer merely provides an opportunity for a defendant with a preexisting intent to commit an offense there is no entrapment. (*People v. Watters,* 246 Cal.App.2d 154 [54 Cal.Rptr. 494].)

■ The question of whether a defendant was entrapped is generally one for the trier of fact and where the finding of no entrapment is supported by substantial evidence, it will not be disturbed on appeal. (*People v. Ryan,* 103 Cal.App.2d 904, at p. 909 [230 P.2d 359]; *People v. Spencer,* 193 Cal.App.2d 13, at p. 18 [13 Cal.Rptr. 881].)

As noted previously, Officer Stanley surreptitiously recorded several telephone conversations which he held with defendant. These recordings were played to both the grand jury and the trial jury. Such evidence was lawfully admissible. (*People v. Malotte,* 46 Cal.2d 59 [292 P.2d 517].)

Finally defendant complains of the trial court's instructions to the jury. Her assertion in her brief that the trial court refused certain proffered defense instructions is deemed abandoned since she had failed to specify for our attention any such instruction. (*Bradley v. Butchart,* 217 Cal. 731 [20 P.2d 693]; *U. S. Industries, Inc. v. Vadnais,* 270 Cal.App.2d 520 [76 Cal.Rptr. 44].)

Defendant's additional contention that the trial court gave certain instructions that incorrectly stated the law is simply a recitation of the contentions discussed and rejected earlier in connection with the sufficiency of the evidence. The jury was fully and properly instructed on all pertinent principles of law.

Defendant makes a number of other claims of error, none of which have merit. The evidence in this case is overwhelming and defendant was fairly tried. There was no miscarriage of justice.

The judgment is affirmed.

Roth, P. J., and Fleming, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied July 3, 1975.