[No. B002317. Second Dist., Div. Six. Aug. 2, 1984.]

MICHAEL R., a Minor, etc., Plaintiff and Appellant, v.
JEFFREY B., a Minor, etc., et al., Defendants and Respondents.

**COUNSEL**

Joyce & Nadasi, Leslie F. Nadasi and Randolph Joyce for Plaintiff and Appellant.

Lawler & Ellis and Margot Davis for Defendants and Respondents.

**OPINION**

**STONE, P. J.**—Michael R., a minor, appeals through his guardian ad litem from a judgment entered in favor of respondents upon an order granting respondents' motion for summary judgment. ▮ The issue herein is whether verbal encouragement to commit assault with a deadly weapon is affirmative conduct sufficient, as a matter of law, to impose civil liability

for damages ensuing from that assault. We hold that it is, reverse the judgment and order the trial court to reinstate appellant's complaint against respondents.

## FACTS

December 18, 1979, at approximately 8 p.m. Michael R., while walking home from a school banquet, was struck in the eye with a marble and, as a result, was blinded in that eye. Earlier that day Lance T., Bruno N., Jr., Edie K. and Jeffrey B. took turns shooting marbles with a wrist rocket (slingshot). Only Jeffrey B. shot marbles at automobiles driving by the open field in which they were playing. According to deposition testimony incorporated into the opposition's motion for summary judgment, Lance T. had had at least one prior altercation with Michael R. and Bruno N. also, did not like him and Bruno N. was aware of the bad blood between Lance T. and Michael R. Two female schoolmates had also had arguments with Michael R. culminating in Michael R.'s being shoved by one of them in Lance T.'s and Bruno N.'s presence.

As Michael R. left the school after the banquet, Lance T. pointed him out to Jeffrey B. and according to Jeffrey's testimony, Bruno N., Edie K. and Lance T. prompted and encouraged him to shoot Michael R. with the wrist rocket. Jeffrey B. testified that he did not know Michael and had no intention of shooting at him until incited by the others. Jeffrey B. was prosecuted in juvenile court for assault with a deadly weapon and pleaded "guilty."

At deposition the school principal said that neither Bruno N. nor Lance T. denied involvement in the incident. In their depositions, however, the defendants denied that Jeffrey B. was given any encouragement to shoot at Michael. For purposes of the summary judgment motion, respondent Bruno N., admits making the statement, "Hey shoot him; go for it."

In appellant's complaint, entitled "FIRST AMENDED COMPLAINT FOR DAMAGES (NEGLIGENCE AND NEGLIGENT SUPERVISION OF CHILD)" he alleged that "Jeffrey B., Lance T., Bruno N., Edie K. and Does I through 4, negligently, recklessly, wantonly and intentionally shot a marble in the direction of plaintiff by the use of a slingshot or other device, in a reckless and wanton disregard of the possible consequences to plaintiff by reason thereof and said defendants knew or should have known that said conduct would unreasonably expose the general public and in particular the plaintiff to probable serious harm, . . . . Said defendants were involved in joint activity and were aiding and abetting each other in the perpetration of shooting marbles in a manner that would unreasonably expose others to serious harm."

Respondents' motion for summary judgment was grounded upon the facts that: 1) no evidence existed that Bruno N. participated in the incident and 2) he had no duty under California law to control the conduct of the third person who injured plaintiff. The basis of the latter argument is that there is no known tort of "negligent encouragement."

Appellant's opposition raises the theory of common design; they had all used the slingshot; they all saw Jeffrey B. shoot at cars; they knew that Lance T. and his female friends "had it in for" Michael; and when Michael came along, Lance, Edie and Bruno encouraged Jeffrey to shoot at him. Consequently, appellant argues that defendants had a duty to terminate the joint enterprise from the first instance Jeffrey B. used the slingshot in a reckless manner and a further duty to warn all foreseeable victims.

### DISCUSSION

Issue finding rather than issue determination is the pivotal factor in a proceeding under Code of Civil Procedure section 437c. (*Whaley* v. *Fowler* (1957) 152 Cal.App.2d 379, 381 [313 P.2d 97].) If there is any doubt whether summary judgment should be granted, it should be resolved against the moving party. (*Ibid.*) To ascertain the existence or absence of triable issues, the trial judge examines "affidavits, declarations, admissions, answers to interrogatories, depositions and matters of which judicial notice shall or may be taken" (Code Civ. Proc., § 437c), and may also draw reasonable inferences from the facts before him. (*DeSuza* v. *Andersack* (1976) 63 Cal.App.3d 694, 698 [133 Cal.Rptr. 920].) Although affidavits of the moving party are to be strictly construed and those of the opponent liberally construed, the party opposing a motion for summary judgment, which is supported by affidavits or declarations sufficient to sustain the motion, has the burden of showing that triable issues of fact exist. (*Id.* at p. 698.)

On appeal Michael R. argues that the remark, "Hey shoot him; go for it" is a violation of Penal Code section 653f and constitutes negligence per se.[1] **(3)** Solicitation consists in asking another to commit one of the crimes specified in section 653f with intent that the crime be committed, but intent may be inferred from the circumstances of the asking. (*People* v. *Gordon* (1975) 47 Cal.App.3d 465, 472 [120 Cal.Rptr. 840].) Fur-

---

[1]Penal Code section 653f provides: "(a) Every person who solicits another to . . . commit or join in the commission of . . . assault with a deadly weapon or instrument . . . is punishable by imprisonment in the county jail not more than one year or in the state prison . . . .

"(d) An offense charged in violation of subdivision (a), (b) or (c) must be proved by the testimony of two witnesses, or of one witness and corroborating circumstances."

thermore, it is not necessary to plead the statute where the alleged cause of action is not a violation of the statute, but rather negligence of the defendant, and the ordinance is merely evidence offered to show such negligence. (*McNeill* v. *A. Teichert & Sons, Inc.* (1955) 137 Cal.App.2d 5, 9 [289 P.2d 595].) ■ Nor has appellant waived the right to argue favorable inferences because they were not argued to the trial court. Code of Civil Procedure section 437c requires the trial court to consider all inferences reasonably deducible from the evidence. That appellant's attorney did not urge the trial court at the original hearing on the motion to draw certain specific inferences relieves neither the trial court nor this court from a duty to take those inferences into account. (*Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180, 185 [163 Cal.Rptr. 912].) ■ Furthermore, since respondent did not object to evidence in appellant's declarations in opposition to summary judgment, evidentiary objections have been waived.[2]

(7) Violation of a statute without justification constitutes presumptive failure to exercise due care if the violation proximately caused the injury and the person injured was one of the class of persons for whose protection the statute was adopted. (*Satterlee* v. *Orange Glenn School Dist.* (1947) 29 Cal.2d 581, 590 [177 P.2d 279] disapproved on other grounds in *Alarid* v. *Vanier* (1958) 50 Cal.2d 617, 624 [327 P.2d 897]; Evid. Code, § 669.)

■ Whether the injury involved resulted from an occurrence of the nature which the statute was designed to prevent and whether plaintiff was one of the class of persons for whose protection the statute was adopted are questions of law. (*Nunneley* v. *Edgar Hotel* (1950) 36 Cal.2d 493, 497-498 [225 P.2d 497]; *Peter W.* v. *San Francisco Unified Sch. Dist.* (1976) 60 Cal.App.3d 814, 822 [131 Cal.Rptr. 854].) Whether the party to an action has violated a statute is generally a question of fact. (*Alarid* v. *Vanier, supra,* 50 Cal.2d 617, 624.) Similarly, the question whether the violation has proximately caused or contributed to the plaintiff's injury is usually a matter for jury decision. (*Satterlee* v. *Orange Glenn School Dist., supra,* 29 Cal.2d 581, 590.) ■ The statutory violation must be the proximate cause of the injury to constitute negligence per se. (*Nunneley* v. *Edgar Hotel, supra,* 36 Cal.2d 493, 498.)

■ Respondent contends that section 653f was intended neither to prosecute "vocal bystanders" nor provide for civil liability. We disagree. It is indisputable that an injury resulting from commission of an assault with a deadly weapon is the type of injury a statute prohibiting solicitation to com-

---

[2]Code of Civil Procedure section 437c provides: "(c) . . . In determining whether the papers show that there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, except that to which objections have been made and sustained by the court, and all inferences reasonably deducible from such evidence. . . ."

mit assault with a deadly weapon was designed to prevent. Someone who encourages another to shoot a person is not a "verbal bystander." Such solicitation (admitted herein for the purpose of the motion) is precisely the conduct proscribed by the statute. Furthermore, "(t)hat section is designed not only to prevent solicitations from resulting in the commission of the crimes solicited, but to protect 'inhabitants of this state from being exposed to inducement to commit or join in the commission of the crimes specified . . . .' [Citations.] 'Purposeful solicitation presents dangers calling for preventive intervention and is sufficiently indicative of a disposition towards criminal activity to call for (criminal) liability . . . .'" (*Benson* v. *Superior Court* (1962) 57 Cal.2d 240, 243 [18 Cal.Rptr. 516, 368 P.2d 116].)

Additionally, the statute need not provide specifically for civil damages or liability. ▋▋ Violation of a statute embodying a public policy is generally actionable even though no specific civil remedy is provided in the statute itself. Any injured member of the public for whose benefit the statute was enacted may bring the action. (*Laczko* v. *Jules Meyers, Inc.* (1969) 276 Cal.App.2d 293, 295 [80 Cal.Rptr. 798].) In *Krueger* v. *City of Anaheim* (1982) 130 Cal.App.3d 166 [181 Cal.Rptr. 631], the city sought reimbursement from Krueger for workers' compensation payments to a city-employed security officer who was injured by Krueger, a fan the officer was attempting to eject from a baseball game. The trial court granted summary judgment against the city on its cross-complaint based on the "fireman's rule." The appellate court stated that a criminal statute is usually enacted not to protect policemen from injury while investigating prohibited conduct but rather to protect the public. An officer, called upon to enforce a criminal statute, is thus not one of the class of persons for whose protection the criminal statute is adopted. However, Penal Code sections 241, 243 and 148 (intentional assault or battery on a peace officer; battery on a peace officer; or resisting an officer in the performance of his duties) are statutes "clearly directed to protect the officer, and the legislative protection thus provided calls for a public policy which would come to the aid of the officer. The Legislature has clearly provided a basis for imposing liability, i.e., the violation of those statutes protecting the police officer constitutes a breach of duty giving rise to a cause of action and calling for relief by way of damages." (*Id.,* at p. 173.) Although a statute that provides solely for a criminal penalty does not *create* a civil liability, the significance of the statute in a civil suit for negligence involves its formulation of a standard of conduct that the court then adopts in the determination of such liability. (*Clinkscales* v. *Carver* (1943) 22 Cal.2d 72, 75 [136 P.2d 777].)

Respondents further contend that negligence per se cannot be found where there is no duty; Bruno N. had no legal duty to protect appellant or control Jeffrey B. absent a "special relationship." Respondents' argument is based

upon a series of cases which hold that a person has no duty to control the conduct of a third person, nor to warn those endangered by such conduct, absent a "special relationship" to either the third person or the victim. (Rest.2d Torts, § 315; *Tarasoff* v. *Regents of University of California* (1976) 17 Cal.3d 425, 435 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166].) This rule, based on the concept that a person should not be liable for nonfeasance (failure to act as a good Samaritan) has no application where the defendant, through his own action (misfeasance) has worsened the plaintiff's position and has created a foreseeable risk of harm from a third person. (*Pamela L.* v. *Farmer* (1980) 112 Cal.App.3d 206, 209 [169 Cal.Rptr. 282].) Encouragement to commit the crime of assault with a deadly or dangerous weapon is likely to create a foreseeable risk of harm to the intended victim.

 Proof that a defendant was negligent as a matter of law does not automatically establish liability; plaintiff still bears the initial burden of showing that defendant's negligence was a proximate cause of the injury. (*Haft* v. *Lone Palm Hotel* (1970) 3 Cal.3d 756, 765 [91 Cal.Rptr. 745, 478 P.2d 465].) An actor may be liable, however, if his negligence is a substantial factor in causing an injury; he is not relieved of liability because of an intervening act of a third person whose act is reasonably foreseeable. (*Vesely* v. *Sager* (1971) 5 Cal.3d 153, 163 [95 Cal.Rptr. 623, 486 P.2d 151]—superseded by statute as stated in *Burke* v. *Superior Court* (1982) 129 Cal.App.3d 570 [181 Cal.Rptr. 149].) Under the circumstances, Jeffrey's conduct was reasonably foreseeable and not so highly extraordinary as to be considered a superseding cause of the victim's injury. (*Stewart* v. *Cox* (1961) 55 Cal.2d 857, 864 [13 Cal.Rptr. 521, 362 P.2d 345].)

Respondents cite *Coffman* v. *Kennedy* (1977) 74 Cal.App.3d 28 [141 Cal.Rptr. 267] as a "remotely comparable case" for the proposition that verbal encouragement of a codefendant is not tortious. In *Coffman,* defendant Kennedy was a passenger in a vehicle driven by Hughes who was intoxicated and speeding. It was alleged that Kennedy had served Hughes the alcoholic beverages which resulted in Hughes' intoxication. Coffman's first cause of action sought recovery on the theory of aiding and abetting the wilful misconduct of Hughes. The appellate court stated: "While a defendant may be held liable in tort for actively aiding or encouraging a wrongdoer (see *Thomas* v. *Doorley* (1959) 175 Cal.App.2d 545, 550 [346 P.2d 491]), it is essential that the defendant's own conduct was tortious. The particular defendant who is to be charged with responsibility must have proceeded tortiously—i.e., with intent to commit a tort or with negligence." (*Ibid.,* at p. 32.) The court further stated that appellant had failed to plead facts which show wrongful conduct on the part of respondent.

In *Thomas* v. *Doorley, supra,* defendant Wood was held equally liable as a principal for an assault on plaintiff where "he brought his codefendant to the place and waited with him with the evident purpose of waylaying the plaintiff and taking him to a secluded spot; that he assisted by driving the car; and stood by while the beating was administered." (175 Cal.App.2d at p. 550.)

Appellant's theory herein is that the defendants acted jointly or in concert. But, as in *Coffman,* the allegation fails to state sufficient facts for a joint enterprise—contract, common purpose, and equal right of voice and control. (74 Cal.App.3d 28, 32.)

The joint action alluded to by appellant, however, is in the nature of a conspiracy. ██ "It is true that there is no independent action for civil conspiracy; there is no civil liability of parties who merely agree to engage in wrongful conduct. But joint liability does attach if a joint project to do a wrongful act is carried out and damage has resulted. [Citations.] In tort (as opposed to a criminal action) ' "the major significance of the conspiracy lies in the fact that it renders each participant in the wrongful act responsible as a joint tortfeasor for all damages ensuing from the wrong, irrespective of whether or not he was a direct actor and regardless of the degree of his activity." ' [Citations.]" (*Weatherton* v. *Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168, 175-176 [79 Cal.Rptr. 543].) Mere knowledge, acquiescence, or approval of an act, without cooperation or agreement to cooperate is insufficient to establish liability. (*Id.,* at p. 176.) ██ The gist of the crime of conspiracy is the *agreement* to commit the unlawful act whereas the gist of the tort is the *damage* resulting to the plaintiff from an overt act or acts committed pursuant to the common design. (*De Vries* v. *Brumback* (1960) 53 Cal.2d 643, 649 [2 Cal.Rptr. 764, 349 P.2d 532].) The plaintiff may state a cause of action against several persons by merely alleging that the named defendants committed the acts. The theory of recovery may or may not be a conspiracy. (3 Witkin, Cal. Procedure (2d ed. 1971) Pleading, § 773, p. 2389; *Oppenheimer* v. *City of Los Angeles* (1951) 104 Cal.App.2d 551, 553 [232 P.2d 30].)

We do not find that imposing liability upon one who actively encourages the commission of a crime "dictates imposition of blanket liability on bystanders" as argued by respondent or that such liability would have a "chilling effect" on First Amendment rights. **(17)** Penal Code section 653f is not an unconstitutional infringement by the Legislature on freedom of speech; it is a valid exercise of police power to prevent harm which would result if the inducement proved successful and to protect the public from being exposed to inducements to commit or join in the commission of crime. (*People* v. *Gordon, supra,* 47 Cal.App.3d 465, 474.)

In *Soldano* v. *O'Daniels* (1983) 141 Cal.App.3d 443 [190 Cal.Rptr. 310], the reviewing court repeated seven factors enunciated by the California Supreme Court to be considered in determining whether a duty is owed to third persons: 1) foreseeability of harm to plaintiff; 2) degree of certainty that plaintiff suffered injury; 3) closeness of the connection between defendant's conduct and injury suffered; 4) the moral blame attached to the defendant's conduct; 5) the policy of preventing future harm; 6) the extent of the burden to the defendant and consequences to the community of imposing a duty to exercise care with resulting liability for breach, and 7) the availability, cost, and prevalence of insurance for the risk involved. (P. 451.)

The harm in the instant case was clearly foreseeable; Jeffrey B. had been shooting at automobiles previously. The certainty of appellant's injury was undisputed. There was a proximate connection between the verbal encouragement and the shooting. Encouragement or solicitation of an assault with a deadly or dangerous instrument was clearly wrong. Imposing a duty would promote a policy of preventing future harm; it would not impose liability which did not previously exist for mere bystanders. The burden on Bruno N. to abstain from encouraging or soliciting a crime was minimal.

We recognize that courts are obliged to exercise particular care when deciding summary judgment motions in cases implicating First Amendment interests. (*Bill* v. *Superior Court* (1982) 137 Cal.App.3d 1002, 1014 [187 Cal.Rptr. 625].) Our holding herein will not, however, "lead to self-censorship which would dampen the vigor and limit the variety of public debate." (*Bill* v. *Superior Court, supra,* 137 Cal.App.3d at 1006.) **(19)** Not every spoken word is protected speech. (*Brandenburg* v. *Ohio* (1969) 395 U.S. 444, 447 [23 L.Ed.2d 430, 433 89 S.Ct. 1827].) First Amendment principles are not absolute, and liability may exist for tortious speech. (*Bill* v. *Superior Court, supra,* at p. 1009.) "The First Amendment does not sanction the infliction of physical injury merely because achieved by word, rather than act." (*Weirum* v. *RKO General, Inc.* (1975) 15 Cal.3d 40, 48 [123 Cal.Rptr. 468, 539 P.2d 36].)

We adhere to the well-established principle that mere proximity to an assailant, even with knowledge of his assaultive tendencies, does not establish a relationship imposing a duty to control the assailant's conduct. (*Davidson* v. *City of Westminister* (1982) 32 Cal.3d 197, 205 [185 Cal.Rptr. 252, 649 P.2d 894].) The "special relationship" doctrine, however, "has no application if the plaintiff's complaint, as here, is grounded upon an affirmative act of defendant which created an undue risk of harm . . . ." (*Weirum, supra,* at p. 48.) Liability is not predicated upon Bruno N.'s failure to intervene for the benefit of the victim but rather upon his creation of

an unreasonable risk of harm to appellant. (*Id.*, at p. 49; *Bill* v. *Superior Court, supra,* 137 Cal.App.3d 1002, 1011.)

We, therefore, find that appellant's opposition to respondents' motion for summary judgment raised a triable issue of fact whether Bruno N. actively encouraged, solicited or conspired to injure Michael R. and that verbal encouragement is included within the parameters of Penal Code section 653f to constitute negligence per se.

The judgment in favor of respondents is reversed.

Abbe, J., and Gilbert, J., concurred.